Cowenhoven v. Freeholders.

CHARLES T. COWENHOVEN v. BOARD OF CHOSEN FREE-
HOLDERS OF THE COUNTY OF MIDDLESEX.

1. The statutory limitation of six years for the bringing of a suit is not applicable when the entire cause of action arises out of a statute.
2. The plaintiff, as the law judge of the Common Pleas, was entitled to certain fees given him by the statute. *Held*, that such cause of action had not become barred by the lapse of six years.

The declaration exhibited these facts: That on the 1st day of April, 1869, the plaintiff was duly appointed and commissioned the law judge of the Court of Common Pleas of the county of Middlesex, and entered upon the execution of his office, &c., and performed all its duties until the 1st day of April, 1874; that after such appointment and commission, and after the making of the act of the legislature approved March 18th, 1869, entitled, &c., and which provided that the plaintiff should be entitled to $3 for each day's attendance in the discharge of his duties as such judge in said court, the plaintiff so attended three hundred and twenty-one days, and thereby became entitled to the sum of $963, to be paid by the defendant.

To this count the defendant pleaded that the causes of action contained in it did not accrue within six years, &c. This plea was demurred to.

Argued at February Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Edward W. Strong.*

For the defendant, *A. V. Schenck.*

The opinion of the court was delivered by
BEASLEY, CHIEF JUSTICE. In my opinion the statutory

limitation of six years is not applicable to the cause of action set out in the count to which that bar is pleaded. The reason for this view is that the action is founded on the statute and not on a contract. There was nothing whatever conventional in the relationship between the plaintiff and defendants. The defendants had no concern with the appointment of the plaintiff to his office, and the statute, quite irrespectively of any concurrence on their part, imposed upon them the duty to pay him the moneys here sued for. In the origin of the transaction, a promise of the defendants to pay the emoluments in question would have given no force to the plaintiff's right to them ; nor would their express declaration that they would not be bound to such liability have taken anything from its legality. In fine, I repeat the claim in suit is wholly statutable, and the whole right of action, deriving its life from that source, rests upon a specialty. This being the posture of things, the case does not fall under the regulation of the first clause of the statute of limitations, which clause constitutes the groundwork of the plea. The language of that provision is : "That all actions of debt, founded upon any lending or contract without specialty,    *    *    *    shall be commenced and sued within six years," &c. *Rev.*, *p.* 594. But I have already concluded, stating the ground of such conclusion, that the present action is not founded on a contract, but, on the contrary, has no other basis than the legislative act in question.

In my researches I have not discovered a judicial decision which can be said to be, in all respects, in point ; but there are analogous cases which have been determined in accordance with a construction of the statute similar to that above expressed. The decision in the case of *Cork and Bandon Railway Co.* v. *Goode*, 13 *C. B.* 826, is in this vein. It was an action of debt by a railway company against one of its members, for calls, under the authority of an act of parliament, and the plea was that such causes of action did not accrue within six years, and this plea was confronted by a demurrer. The argument in the case, on the one side, went on the ground that the liability of the defendant, which gave

the right of action, was the creature of the statute, while, in opposition, it was insisted that such liability was founded on an implied contract; but the court said that " but for the act of parliament, no action could be brought by the company against one of its own members. This, therefore, is an action brought in respect to a liability created by the statute, and therefore is an action founded upon the statute, and the plea which relies upon the six years' limitation is no answer to it." And it is to be noted that the court in this instance rejected the idea that the action rested on an agreement under circumstances which were far less demonstrative in that respect than are the conditions of the present case, for in the reported case there was at least plausible ground for the contention that the stockholder, by becoming a member of the company, undertook to pay the calls in question, while in the case now under consideration it is evident, as has been already remarked, that the defendants have never been in a position to either assume or reject a liability to pay these judicial fees, which the statute has arbitrarily imposed.

A case closely akin to the one above referred to, came before Judge Story in *Bullard* v. *Bell*, 1 *Mason* 243, the question being whether the statutory six years' limitation could be pleaded as a bar to an action of debt, against a stockholder of a bank, under the provisions of its charter, which imposed a liability on the shareholders to make good the dishonored notes of the institution. The plea, on demurrer, was held bad, the reasoning being that as the statute declared that, under certain circumstances, a stockholder in a bank should pay the debt due from the bank, a direct and immediate obligation to pay it was created; and that the law esteems this the highest kind of specialty, and that consequently the statute, and not any implied promise, formed the foundation of the action.

There are other decisions propounding this same doctrine, as in *Talory* v. *Jackson*, *Cro. Car.* 513, in which it was held that this clause of the statute of limitations could not be set up in an action of debt by force of a statute for not setting

Cowenhoven v. Freeholders.

out tithes; and in *Jones* v. *Pope*, 1 *Saund*. 36, a similar result was reached, the suit being in debt on the act against a jailor for an escape out of execution. The following authorities rest substantially upon the same footing, or clearly recognize the doctrine above expressed : *Van Hook* v. *Whitlock*, 3 *Paige* 409 ; *Shepherd* v. *Hills*, 11 *Ex*. 55 ; *Jordan* v. *Robinson*, 15 *Me*. 167 ; *Richards* v. *Bickley*, 13 *Serg. & R*. 395 ; *Lane* v. *Morris*, 10 *Ga*. 162.

But there is a second position taken by the counsel of the defendants, which is that, on the admission of the facts as stated in this count of the declaration, this suit is not sustainable. If this be the result from the plaintiff's own showing, the demurrer, of course, is sustainable, as the court will go back to the first legal defect apparent in the record.

The supposed infirmity in the plaintiff's case thus relied on, is that an action of debt will not lie for these judicial fees, inasmuch as the statute giving them prescribes a special mode for their collection.

But I think this is a mistake as to the matter of fact. This is the series of laws relative to this class of fees. The first act on the subject was passed on the 7th of March, 1850, (*Pamph L.*, p. 285,) and it was entitled " An act to provide additional compensation to the judges of the inferior Courts of Common Pleas in this state," the substance of the enactment being that such judges should receive a *per diem* allowance of $1.50 for every day they should actually attend, in the discharge of their duties, at any stated or special term, and which fees the collector of the county was authorized and required to pay upon a certificate of the clerk and surrogate of the number of days they should so attend, with a proviso that no judge should receive, by virtue of such act, more than $50 in any one year. The contention is that the mode of payment here prescribed is the only one that can be enforced, and that a suit cannot be resorted to for these fees. But the inquiry arises whether this mode of proceeding is prescribed by the act of 1869, which confers the right to the fees now in question. After the act of 1850, above referred to, came

that of 1854, (*Pamph. L.*, p. 401,) which increased the iudicial *per diem* to the sum of $2; the statute next in sequence is that of April 6th, 1865, which is entitled "A further supplement to an act to provide for the support of the government of this state, and to fix the salaries of public officers," approved April 4th, 1845; it was to remain in force two years, and merely provided " that the judges of the Court of Common Pleas, &c., should each receive $3 *per diem* for every day's attendance at court." It did not refer to the act of 1850, nor did it prescribe any mode for the payment of the fees which it created. After the act of April 4th, 1867, which extended the provisions of that of 1865 for two years, we come to the act now in question, which was enacted on the 15th of April, 1869. This act gives the judges of the Pleas a *per diem* of $3 in permanence, and it is not a supplement to the act of 1850, nor does it in anywise refer to it. It denotes no form for the collection of the fees which it confers. Under these circumstances it does not seem to me there is any ground for transferring from this law of 1850 this special procedure over to this law of 1869. It is not unreasonable to suppose that the legislature might have been willing to impose an obligation of immediate payment on the county collector on the certificate of the clerk or surrogate, in a case where the annual amount could not exceed the small sum of $50, which was the limitation in the act of 1850, and yet would have thought it unwise to sanction such a summary proceeding when the fees, by force of the act of 1869, were certain, in the same period, to amount to several hundreds of dollars. In my opinion this latter statute, and which is that upon which the suit rests, does not ordain any method for the collection of those moneys, and that consequently the present suit has been rightly brought. Upon the point raised on this subject, therefore, no opinion is necessary.

The plaintiff must have judgment on this demurrer.