132 N.J. Super. 92 (1975)
332 A.2d 232
MARLE P. WADE AND ARLENE E. WADE, HIS WIFE, PLAINTIFFS,
v.
NEW JERSEY TURNPIKE AUTHORITY, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 8, 1975.
*93 Mr. Raymond W. Troy for plaintiffs (Messrs. Lum, Biunno & Tompkins, attorneys).
Mr. William H. Graham for defendant New Jersey Turnpike Authority (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Mark A. Sullivan, Jr. Deputy Attorney General, attorney for defendant, State of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
BRESLIN, J.S.C.
Marle P. Wade and his wife, Arlene E. Wade, make this motion to permit late filing of notice *94 under N.J.S.A. 59:8-9. The motion is directed at the New Jersey Turnpike Authority and the State of New Jersey.
The New Jersey Tort Claims Act requires that notice of claim be filed against public entities within 90 days after accrual. N.J.S.A. 59:8-8. Provision for filing of late notice, up to one year after accrual of a claim, is found in N.J.S.A. 59:8-9, where the public entity will not be substantially prejudiced by the delay. A motion to allow a late filing to stand must be based on affidavits showing sufficient reasons for the moving parties' failure to file timely notice.
Marle P. Wade was operating a truck owned by Riteway Rentals and leased to Scientific Packing Corporation, when he became involved in what has come to be termed the turnpike accidents of October 23 and 24, 1973. Neither the Turnpike Authority, nor the State were noticed by Marle P. Wade within the 90 day period. Both of these public entities were noticed some eleven months after the date of the accident. Thus it falls to this court to decide whether the public entities involved would be substantially prejudiced by the delay in filing a claim, and whether the reasons set forth in Marle P. Wade's affidavits are sufficient to allow the late notice to stand. There is too, the further question, raised by Marle P. Wade, of whether the New Jersey Turnpike Authority comes within the New Jersey Tort Claims Act at all.
In his affidavit attached to this motion, Marle P. Wade states that he was disabled from October 24, 1973, (the date of the accident) to April 29, 1974; that he was in and out of hospitals, both in New Jersey and in Maine, as a result of injuries sustained in the accident, until January 15, 1974; that he was confined to his home through March of 1974; and that he was an out-patient until April 15, 1974. Although employed by the Scientific Packing Corporation, located in Elizabeth, New Jersey, Marle P. Wade is and has been a resident of the State of Maine for the *95 past 18 years. Wade contacted Maine counsel only about the possibility of suing "the other driver". This occurred November 11, 1973, but at that time Marle P. Wade did not know who the other driver was. He made no further inquiries of his Maine attorney until June of 1974, when he was served as a defendant in another case arising out of the same accident.
The other affidavit submitted with this motion is that of Raymond Troy, Marle P. Wade's New Jersey counsel. Troy states that Maine counsel failed to contact his firm until September 6, 1974, fully 10 months after the accident. He further states that Marle P. Wade came to his office on September 19, 1974 with several summonses and complaints that had been served upon him in various actions arising out of these same accidents. At that time Raymond Troy saw that the Department of Environmental Protection of New Jersey, the New Jersey Turnpike Authority and the New Jersey Division of State Police were defendants in cases growing out of the Turnpike Accidents.
In his affidavit Raymond Troy contends that N.J.S.A. 59:1-1 et seq. notice is not required as to the New Jersey Turnpike Authority. He notes that the Turnpike Authority carries liability insurance and that it is represented by independent attorneys, outside of the Attorney General's office. The affidavit also notes that N.J.S.A. 27:23-1 et seq. established the New Jersey Turnpike Authority within the Department of Transportation and authorized the Turnpike Authority to sue and be sued. It is argued that the power to sue and be sued takes the Turnpike Authority out of the definition of "State" contained in N.J.S.A. 59: 1-3.
The brief submitted in support of this motion reiterates the reasons set forth in the attached affidavits and provides greater detail as to the injuries sustained by Marle P. Wade, the dates of his admissions and releases from hospitals, and the operations and other treatment he underwent before being able to return to work on April 28, 1974.
*96 The question of whether or not the New Jersey Turnpike Authority is included in N. J S.. A. 59:1-1 et seq. needs to be disposed of before the other questions relating to this motion are reached. It is the opinion of this court that the Turnpike Authority does fall within the New Jersey Tort Claims Act. In their brief plaintiffs read the New Jersey Turnpike Authority out of the statute by demonstrating that the Turnpike Authority is not included in the definition of "State" contained in N.J.S.A. 59:1-3. It should be noted, however, that "Public entity" and not "State" is the operational term used throughout the statute. It is then to the definition of "Public entity" which we must look.
The brief also refers us to the decisions of McCabe v. New Jersey Turnpike Authority, 35 N.J. 26 (1961), and New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949). These two cases were decided by our Supreme Court 11 and 23 years prior to the legislative enactment which here concerns us. It seems clear from the language of the Tort Claims Act that the legislature wished to deal with the whole area of sovereign immunity, including such past problems as were raised in McCabe and Parsons, in this one statute.
The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity ... Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein ...
N.J.S.A. 59:1-2 and at N.J.S.A. 59:2-1(a) it is stated:
Except as otherwise provided by this act a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
*97 Title 59 of the New Jersey Statutes deals with sovereign immunity. Subtitle 1. is the Tort Claims Act, which concerns us in the present action. N.J.S.A. 59:1-3 is the definitions section of that Act and is reproduced in pertinent part below:
As used in this subtitle:
"Public entity" includes the State, and any other county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.
"State" shall mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued.
The two definitions, "Public entity" and "State" should be viewed as follows: the former is a greater inclusive grouping based on sovereignty, i.e. political subdivisions; the second is a lesser included sub-grouping based on administrative subdivisions of the State. "State" then is but one of the public entities listed in the former definition. "Public entity" is the general term, "State" is a specific. Each of the parts included under the term "Public entity" has had that sovereignty possessed by the State parcelled out to it, and is to that degree independent of the State, and the equal of the State. The administrative parts that are listed in the meaning of "State", however, merely share in or are covered by the umbrella of sovereignty which the State has retained, but have no sovereignty of their own. These include offices, departments, divisions, bureaus, boards, commissions and state agencies. The exclusion of parts "statutorily authorized to sue and be sued" is only contained in the latter definition, that of "State". Unless a moving party can demonstrate that the Turnpike Authority is an office, department, division, bureau, board, commission or state agency, then the said exclusion contained in the definition of "State" does not apply to the Turnpike Authority. On the other hand, the Turnpike Authority *98 clearly fits under the definition of "Public entities", namely as a public authority. The New Jersey Turnpike Authority was established in N.J.S.A. 27:23-5 where it is stated that, "The authority shall be a body corporate and politic and shall have perpetual succession...."
The exclusion of entities which have the power to sue and be sued cannot apply to the entities included in the definition of "public entities" for two reasons. First, the Legislature did not attach the exclusion clause to that definition. Second, if it were said to apply to "public entities" then not only public authorities, but also every county and municipality with the power to sue and be sued would be excluded, clearly an absurd result and an unreasonable interpretation. Since the clause excluding those parts of the State which are not permitted to sue or be sued is only appended to one definition in N.J.S.A. 59:1-3, the reasonable inference to be drawn is that the Legislature only intended to so limit that definition and its parts. The other administrative departments and agencies of the State that may not sue and be sued share the State's sovereignty. They are represented by the Attorney General as is set forth in N.J.S.A. 59:8-7. The entities listed in the definition of "public entity," some of which do have the power to sue and be sued (e.g. the State, public authorities, municipalities, counties), are included in the Tort Claims Act. The clear inference is that political subdivisions of the state are meant to be protected by the sovereign immunity statutes, whereas administrative agencies within the state are only protected if they have not been empowered to sue and be sued.
N.J.S.A. 59:8-2 supports the above stated construction which distinguishes the public entity "State" from all other public entities in the Act.
For purposes of this chapter "local public entity" means a public entity other than the State.
*99 As is shown in N.J.S.A. 59:8-7, there is no merit to the argument that an entity with independent attorneys cannot be within the Tort Claims Act.
A Claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission. A claim for injury or damages arising under this act against a local public entity shall be filed with that entity.
It hardly needs to be pointed out that not only the Turnpike Authority, but other corporate public entities, such as municipalities and counties, retain their own counsel separate and apart from the Attorney General. The construction urged by movant in his application would be an inconsistent reading of the language in the act.
In Lutz v. Semcer, 126 N.J. Super. 288 (Law Div. 1974), it was said that "[m]ere ignorance of the law is not a sufficient basis to excuse compliance with the requirements of this remedial statute". Here there are reasons other than ignorance of the law, set forth in the affidavits and brief accompanying this motion. Those additional reasons include; the five month confinement of Marle P. Wade, due to injuries received in the accident; his unawareness of any claim against public entities; the fact that shortly after the accident he was removed from a New Jersey hospital and flown to Maine where he remained until after April 28, 1974; and the late date at which New Jersey counsel was brought into the matter and apprised of the possible claims against public entities. Such reasons are certainly sufficient within the meaning of N.J.S.A. 59:8-9.
The Legislature must be presumed to have included N.J.S.A. 59:8-9 in the Tort Claims Act in order to allow for notices of claims against public entities to be filed more than 90 days after accrual. The Turnpike Accidents of October 23 and 24, 1973 involved some 66 vehicles, the deaths of nine persons and injuries to 37 others. Extensive coverage was given in the media at the time of this occurrence *100 and it was the subject of National Safety Board hearings. The New Jersey Turnpike Authority and the Division of State Police were directly involved in investigating the accident. It is clear that the public entities involved were not substantially prejudiced by Marle P. Wade's delay in filing notice of claim, nor do any of the opponents of this motion contend that prejudice has resulted. For these reasons and because of the reasons discussed above and because of the unique and extremely complicated nature of this accident, this motion to permit filing of notice of claim out of time is granted.