195 N.J. Super. 542 (1984)
480 A.2d 953
BLAZER CORPORATION, PLAINTIFF,
v.
NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, DAVID A. WERBLIN, CHARLES SERRAINO, ADRIAN M. FOLEY, JR., GEORGE F. KUGLER, JR., AUBREY C. LEWIS AND JOSEPH M. MCCRANE, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided February 28, 1984.
*544 Robert S. Tobin, attorney for plaintiff.
Winne, Banta & Rizzi, attorneys for defendants (Donald A. Klein, appearing).
YANOFF, J.S.C. (temporarily assigned) (Retired, on Recall).
A summary judgment motion based in large part on the thesis that plaintiff's cause of action is time barred raises the issues herein. The case is ripe for disposition because of admissions in pleadings and verifications, and statements made by counsel during oral argument. Defendants urge that plaintiff's cause of action comes within the Tort Claims Act, N.J.S.A. 59:1-1 et seq., and is time barred by either the two-year limitation therein, N.J.S.A. 59:8-8, or the six-year Statute of Limitations, N.J.S.A. 2A:14-1. The date most favorable to plaintiff is August 14, 1975, when Blazer Corporation was forceably evicted from its premises. The action herein was instituted in 1983, more than six years later.
Plaintiff, in answer, argues that defendant New Jersey Sports and Exposition Authority (hereafter Authority) is not a "public entity" within the protection of the Tort Claims Act, because it has the power to sue and be sued. Plaintiff urges also that in any event "the instant cause of action is predicated upon the violation of state statutes by defendants for which there is no limitation of time in New Jersey." In support, plaintiff cites: Cowenhoven v. Freeholders, 44 N.J.L. 232 (Sup. Ct. 1882); Mayor of Jersey City v. Sackett, 44 N.J.L. 428 (E. & A. 1882); McFarlan v. Morris Canal & Banking Co., 44 N.J.L. 471 (Sup.Ct. 1882); Outwater v. Passaic, 51 N.J.L. 345 (Sup.Ct. 1889); Warren Cty. v. Harden, 95 N.J.L. 122 (E. & A. 1920); Miller v. Hudson Cty. Bd. of Chosen Freeholders, 16 N.J. Super. 457 (App.Div. 1951)[1]; Lavin v. Hackensack Bd. of Educ., 90 N.J. 145 (1982).
*545 Before August 14, 1975, a corporation bearing the same name as plaintiff owned a tract of land in the Meadowlands which was taken pursuant to eminent domain by defendant Authority for which the corporation received approximately $2 million.
Blazer Corporation then was adjudicated bankrupt. Plaintiff is the purchaser of the assets at the bankruptcy sale. Included among the assets purchased was the name of Blazer Corporation. However, the plaintiff in this case is not the same entity as the defendant in the eminent domain proceedings.
Plaintiff's claim against Authority and its then officers is postulated on a failure of Authority to properly implement N.J.S.A. 52:31B-1 et seq., the "Relocation Assistance Law of 1967" and N.J.S.A. 20:4-1 et seq., the "Relocation Assistance Act", and administrative regulations implementing the statutes. N.J.S.A. 52:31B-4(a) provides in part:
Whenever any State agency ... causes to be displaced, any person or business concern from any real property on account of the acquisition of real property for a public use, ... any such State agency ... shall make fair and reasonable relocation assistance payments to any such displaced person or business concern as hereinafter provided in this section.
N.J.S.A. 52:31B-4(c) and N.J.S.A. 20:4-4 limit relocation expense reimbursement. The maximum recoverable under N.J.S.A. 20:4-4(c) is $10,000.
It is not necessary to recite the alleged failures of Authority to conform to the requirements of the statute and administrative regulations, because I have determined that the action is time barred as to both Authority and its officers.
The first phase of this action occurred in the Federal District Court of New Jersey. The allegations of the complaint filed there are almost the same as those here, except that its theory was that Authority's failure to implement the requirements of N.J.S.A. 52:31B-1 et seq. and N.J.S.A. 20:4-1 et seq. and cited administrative regulations constituted a constitutional violation which entitled plaintiff to relief under 42 U.S.C.A. § 1983. A federal district court judge denied a motion to dismiss, holding that plaintiff made out a § 1983 cause of action. Subsequently, *546 Judge Harold Ackerman, sitting in that court, dismissed all causes of action against Authority and the individual defendants on the grounds that the Tort Claims Act's two-year statute of limitations barred recovery as to Authority, and that no cause of action could be maintained against the individual defendants because "liability under § 1983 cannot be predicated on notions of respondeat superior." The Third Circuit, under date of December 2, 1982, affirmed the final order granting summary judgment against plaintiff on the sole ground that "... the complaint fails to state a cause of action for violation of that section [1983]." The United States Supreme Court denied certiorari on June 13, 1983.
This action was instituted within four months thereafter.
Plaintiff, citing Bell v. Bell, 83 N.J. 417 (1980), contends that Authority is not a public entity within the meaning of the Tort Claims Act.
The relevant terms are defined in the statute:
"Public entity" includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.
"State" shall mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued. [N.J.S.A. 59:1-3.]
However, Bell is not in point. There, the Delaware River Port Authority was held not within the Tort Claims Act, even though it had power to sue and be sued, because it was a bi-state agency and because the New Jersey Legislature lacked the "power to modify by unilateral action waiver of sovereign immunity set forth in the bi-state compact." Id. at 424.
In Wade v. N.J. Turnpike Authority, 132 N.J. Super. 92 (Law Div. 1975), the Court rejected plaintiff's position. Addressing the precise argument made by plaintiff, the Court ruled that the provision excluding State subdivisions with power to sue and be sued did not apply to public entities. The Court reasoned:

*547 First, the Legislature did not attach the exclusion clause to that definition. Second, if it were said to apply to "public entities" then not only public authorities, but also every county and municipality with the power to sue and be sued would be excluded, clearly an absured result and an unreasonable interpretation. Since the clause excluding those parts of the State which are not permitted to sue or be sued is only appended to one definition in N.J.S.A. 59:1-3, the reasonable inference to be drawn is that the Legislature only intended to so limit the definition and its parts. [Id. at 98.]
S.E.W. Friel Co. v. N.J. Turnpike Auth., 73 N.J. 107 (1977), adopted the logic of the Wade court. The Court noted the official comment to N.J.S.A. 59:1-3: "The definition of `Public Entity' provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions." [Id. at 116; emphasis in original.]
The statute creating the Sports Authority specifies that it is "an instrumentality of the State exercising public and essential governmental functions, ...." N.J.S.A. 5:10-4(a). Hence, the controlling decision is Friel, not Bell.
Plaintiff asserts as to its cause of action:
The complaint is not grounded in tort, nor is it an action for relocation expenses, but instead is based on damages resulting from a willful violation of the aforementioned statutes by the defendants.
Plaintiff seeks, not the limited recovery afforded by the Relocation Assistance Law of 1967 and the Relocation Assistance Act, but far more extensive damages. Plaintiff alleges that the first Blazer Corporation's bankruptcy was caused by defendants' failure to properly implement the statutes. In this respect, plaintiff's case varies from those in which it was held that no statute of limitations was applicable. None of the cases cited by plaintiff involved an indefinite claim for damages, such as we have here. Cowenhoven, supra; Outwater, supra; Miller, supra; and Lavin, supra, all were concerned with claims for salary or similar compensation against public entities. In Cowenhoven it was held that the emoluments of a judge fixed by statute were not subject to the six-year contractual statute of limitations. There was a similar ruling in Outwater. Miller, a *548 more recent case, 16 N.J. Super. 457 (App.Div. 1951), was reversed in 10 N.J. 398 (1952). The Supreme Court there held that an action by jail guards for salary was barred by the six-year statute. One may well doubt whether Cowenhoven and Outwater would be decided today, as they were in 1882 and 1889.
In Lavin a teacher's claim for military service credit was barred, not by the contractual statute of limitations, but by laches. There Justice Schreiber, writing for the majority, relied upon established definitions of laches, writing:
The time constraints of laches, unlike the periods prescribed by the statute of limitations, are not fixed but are characteristically flexible. Pomeroy defines laches as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity." [90 N.J. at 151.]
As a matter of logic, if passage of time cannot be considered in defense, as plaintiff asserts, the defense of laches could not have been established, since time is an essential element of that defense. Three Justices dissented. The opinion of Justice Pashman, in which the other two joined, was that the contractual statute of limitations should have been applied.
Warren County, supra, holding that the obligation of a patient at a state hospital to reimburse the State for maintenance was not subject to the statute of limitations, is not a generalized claim for damages, such as plaintiff makes here.
Finally, Mayor of Jersey City v. Sackett, supra, holding that a claim by a landowner for compensation for the taking of his land does not fall within the statute of limitations comes within the line of cases involving inverse condemnation. In such cases, the property owner invokes the Fifth Amendment of the United States Constitution and asks the Court, in effect, to issue a writ of mandamus compelling the executive to properly compensate him. Van Dissel v. Jersey Central Power & Light Co., 181 N.J. Super. 516 (App.Div. 1981), cert. den. 89 N.J. 409 (1982); George F. Barnes Land Corp. v. Wyckoff Tp. Bd. of *549 Adjustment, 174 N.J. Super. 301 (App.Div. 1980); In re Jersey Central Power and Light Co., 166 N.J. Super. 540, 544 (App. Div. 1979). Here plaintiff has specifically eschewed such relief.[2]
Plaintiff asserts that its claim is not a tort but a category which plaintiff calls a "statutory cause of action." It is true that language of this kind was used in cases cited by plaintiff in disputes over the running of a statute of limitations. Yet, the cases upon which the plaintiff relies were decided prior to enactment of the Tort Claims Act.
If plaintiff's claim falls within the definition of a "tort," it is time barred because of both the Tort Claims Act, N.J.S.A. 59:1-4 et seq., or the usual statute of limitations applicable to torts, N.J.S.A. 2A:14-1, since more than six years have expired since the acts complained of.
We start with the fact that there is no precise definition of "tort." Prosser writes: "A really satisfactory definition of a tort has yet to be found.... Broadly speaking, a tort is a civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." Law of Torts (4th ed. 1971), pp. 1 and 4. See Restatement, Second, Torts § 6. It is probably not possible to define precisely the causes of action to which the Tort Claims Act is applicable, except to say that it does not apply to contract cases or cases in which purely equitable relief is sought. See N.J.S.A. 59:1-4.[3]
I start with analysis of whether plaintiff's cause of action comes within the Tort Claims Act, first, because in this very *550 case Judge Harold Ackerman, in the Federal Court, imputed the Tort Claims Act time limitation, N.J.S.A. 59:8-8, to bar the § 1983 claim. Aitchison v. Raffiani, 708 F.2d 96 (3d Cir.1983), is a square holding to that effect. Similarly, in Gipson v. Township of Bass River, 82 F.R.D. 122 (D.N.J. 1979), and in Lloyd v. Borough of Stone Harbor, 179 N.J. Super. 496, 497 (Ch. 1981), the two-year period of the Statute of Limitations was employed to bar a § 1983 recovery. The courts there saw a sufficient similarity between the § 1983 claim and the Tort Claims Act to consider it appropriate to employ the time limitation of the Tort Claims Act for the purpose of barring the § 1983 claim. Second, examination whether plaintiff's claim comes within the Tort Claims Act entails inquiry into legislative intent and leads to more ready resolution of the problem.
N.J.S.A. 59:2-1(a) outlines basic public entity immunity in broad terms:
Except as otherwise provided by this act, a public entity is not liable for any injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
The Comment to this section states:
Rather the approach should be whether an immunity applies and if not, should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities. [Emphasis in original.]
N.J.S.A. 59:2-3 provides:
a. A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;
b. A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature.
These sections are cited not as to whether Authority is immune from suit, because that issue has not been raised, but to show the encompassing nature of the statute.
The Report of the Attorney General's Task Force on Sovereign Immunity (1972), which preceded enactment of the Tort Claims Act, is pertinent. It noted the necessity for bringing order into the numerous claims against governmental entities:
Moreover, an examination of the rather haphazard approach to government liability extant in the State of New Jersey today provides convincing evidence *551 that only a comprehensive and uniform statute which applies to all governmental entities  whether local or State  including public authorities, will provide for the development of an intelligent and uniform body of governmental tort law in the State of New Jersey.
In an effort to assist in the development of such a body of tort law, the following specific substantive provisions are included in the proposed New Jersey Tort Claims Act:
A. A broad provision immunizing a public entity for high-level discretionary activities based upon the underlying thesis that "it is not a tort for government to govern" and allowing a very limited review of the allocation by government of resources already obtained. [Id. at 11]
Cogsville v. City of Trenton, 159 N.J. Super. 71 (App.Div. 1978), and Irvington General Hsp. v. Dept. of Health, 149 N.J. Super. 461 (App.Div. 1977), illustrate the scope of the Tort Claims Act. In Cogsville the victim of a dog bite brought suit against the city for failure to have the dog removed from public streets and city-owned property in conformity with an ordinance. In Irvington General Hospital suit was brought against the Commissioner of Health on the ground that a certificate of need had been improperly denied the hospital. The hospital sought as additional relief the removal of the Commissioner of Health and all members of the Health Care Administration Board, together with punitive damages from the Commissioner and the members of the Board. The Tort Claims Act was held applicable, the Court saying:
Moreover the trial judge could not have granted relief in the form of punitive damages. The Commissioner and members of the Board were immune from suit since all of the actions alleged as the basis for the complaint were discretionary and constituted administrative action or inaction of a judicial nature, N.J.S.A. 59:2-3(a) and (b); N.J.S.A. 59:3-2(a) and (b). [Id. 149 N.J. Super. at 469-70]
In both Cogsville, supra, and Irvington General Hospital, supra, plaintiffs alleged that public officials had failed to carry out statutes or ordinances, and sought relief similar to that claimed by plaintiff here. I consider the holdings in these cases applicable to the case at hand.
The inevitable conclusion is that the claim which plaintiff makes here is the kind the Legislature intended to include within the Tort Claims Act. It relates to the mechanics of *552 government. There is no assertion of discrimination or animosity towards plaintiff. There is only an allegation that defendants failed to implement a statute, conduct which the Federal Court has determined was not unconstitutional. A Legislature which wished to bring order into actions against governmental entities could hardly have intended to ignore cases of this kind. The hope that "... the courts will exercise restraint in the acceptance of novel causes of action against public entities", in the comment to N.J.S.A. 59:2-1, quoted supra, indicates a legislative desire to bring as many causes of action as possible within the reach of the statute. Only injunctive relief is specifically excluded, N.J.S.A. 59:1-4.
Thus, I hold that as to Authority, plaintiff's action is time barred by N.J.S.A. 59:8-8. The question remaining is whether N.J.S.A. 2A:14-1 bars action against the individual defendants, since the time limitation in the Tort Claims Act is not applicable to them. Lloyd v. Boro. of Stone Harbor, supra.
In Aitchison v. Raffiani, supra, the Court applied the two-year Statute of Limitations of the Tort Claims Act to the individual defendants. The Court reasoned "To hold otherwise would mean that when the limitations period applicable to the Borough was shorter than the general limitations period, that specific period could be circumvented simply by suing individuals in their official capacity." [at 100] See Williams v. Adams, 189 N.J. Super. 196 (Law Div. 1983).
The record in this case does not show whether the individual defendants would be indemnified by the Authority. The question whether the two-year or the six-year statute should be applied, however, need not be decided, because both periods of time have run. Having determined that the Tort Claims Act is applicable, it follows almost inevitably that the acts of which plaintiff complains are subject also to the limitations normally applicable to torts. If the cause of action is a tort within the purview of one statute, it is difficult to exclude *553 it from the scope of another statute. I, therefore, hold that the cause of action as to the individual defendants is time barred by N.J.S.A. 2A:14-1.
Applying the equitable considerations noted in Lavin v. Hackensack Bd. of Educ., supra, plaintiff is barred also by laches as to all defendants. More than eight years have elapsed since the property of the first Blazer Corporation was taken. The controversy relates to whether Authority complied with the relocation assistance statutes. Surely, the passage of time will render it very difficult for Authority to locate witnesses and evidence to support its case. It is disingenuous to say that plaintiff started its action promptly after the United States Supreme Court denied certiorari. Plaintiff could have, and should have, started suit against Authority in 1975 when the alleged failure to provide relocation assistance took place. It could have, and should have, done so promptly thereafter. The impediments to a proper defense increased with each passing year. Only by blinding oneself to the facts can one take the position that the time period in the state court began to run when the United States Supreme Court denied certiorari.
Defendants should present an appropriate order in accordance with this opinion.
NOTES
[1] Reversed, 10 N.J. 398 (1952).
[2] Plaintiff's assertion that there are no time limitations "for breach of a statutory duty" is obviously unsound; e.g. cases such as Selected Risks Insurance Co. v. Zullo, 48 N.J. 362 (1966), in which insurance policies, whatever their language, are held to conform to the statutory policy as to which a statute of limitations applies.
[3] In Canino v. New York News, Inc., 96 N.J. 189 at 194-195 (1984), the Court held that a libel action survived as a "trespass" under the Survival Act (N.J.S.A. 2A:15-3). The logic of that opinion supports the conclusion reached here.