731 A.2d 572

FIRST AMERICAN TITLE INSURANCE COMPANY, PLAINTIFF, v. THE TOWNSHIP OF ROCKAWAY, DONALD M. ERICKSON, AND ATA JIAN–ZIBAEE, DEFENDANTS.

TOWNSHIP OF ROCKAWAY, THIRD–PARTY PLAINTIFF, v. SAFECO TITLE INSURANCE COMPANY, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Chancery Division
Morris County

Decided June 17, 1999.

584

*Jessica M. Seidman,* Esquire, for plaintiff First American Title Insurance Company (*Dollinger, Gonski & Grossman*).

*James J. Higgins,* Esquire, for defendant Township of Rockaway (*Law Offices of James J. Higgins*).

*Dean A. Gaver,* Esquire, for defendant Donald M. Erickson (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP*).

MacKENZIE, P.J.Ch.

## STATEMENT OF FACTS

Plaintiff First American Title Insurance Company ("First American") commenced this action seeking an adjudication of title to the premises on Green Pond Road, Rockaway Township, Morris County, New Jersey, also known as Lots 29 and 29.01, Block 40701, formerly Lot 29, Block 40701, and previously Lot 73, Block 240 ("the subject premises"), and for other declaratory and equitable relief. In 1981, defendant Township of Rockaway ("Township" or "Rockaway") was the fee owner of various lots, including the subject premises. Through the New Jersey Green Acres program, the Township accepted grant monies from the State of New Jersey in consideration for which the Township bound itself to a Green Acres Development Contract. Pursuant to the Green Acres contract, the Township designated, among other properties, the subject premises as recreation and conservation properties subject to Green Acres restriction.

Under the Green Acres Land Acquisition Act, *N.J.S.A.* 13:8A–1 to 8A–55,

> A local unit which receives a [Green Acres] grant under this act shall not dispose of or divert to a use for other than recreation and conservation purposes any lands held by such local unit for such purposes at the time of receipt of said grant without the approval of the commissioner and the State House Commission and following a public hearing by the local unit at least 1 month prior to any such approvals.

*N.J.S.A.* 13:8A–47(b). Thus, pursuant to this provision, the Township was prohibited from selling and conveying the subject premises without obtaining the requisite State approvals.

On August 6, 1985, without the requisite approvals, the Township of Rockaway Council resolved to sell the subject premises. The Township calls this "an unfortunate oversight." The Resolution authorizing sale of the subject premises, among other properties, states:

> f) All conveyances shall be by bargain and sale deed with covenants against grantor's act. No Affidavit of Title will be provided . . .
>
> j) If the title to this property shall prove to be unmarketable, liability of the Township of Rockaway shall be limited to repayment to the purchaser of the amount of his other deposit and the balance of the purchase price (if paid) without any further cost, interest, expense, damage, or claim. Notice of the alleged defects in·title or claim of unmarketability shall be given to the Township of Rockaway in writing not later than thirty (30) days after the sale. The successful bidder agrees that the failure to give such notice shall be deemed conclusive evidence that the purchaser accepts the title in its present condition.

On September 21, 1985, an auction sale was conducted at the Township's Municipal Building. At the auction sale, the subject premises sold for $51,000, and a deed was thereafter delivered to the purchaser, defendant Ata Jian–Zibaee ("Zibaee"). No State approval has since been obtained for either the sale or the deed, and the validity of the fee title conveyance was assured to Zibaee by Safeco Title Insurance Company (now Chicago Title Insurance Company).

On June 20, 1988, a minor subdivision of the subject premises was approved by the Planning Board of the Township of Rockaway. In order to give effect to the subdivision, Zibaee recorded a deed to himself reflecting the subdivision. On September 8, 1995, Zibaee conveyed the subject premises to defendant Donald M. Erickson ("Erickson") for $80,000 by Bargain and Sale Deed. In connection with this conveyance, the grantee, Erickson, gave a purchase money mortgage to Zibaee in the amount of $30,000.

First American assured the conveyance to Erickson and mortgage back to Zibaee. Erickson obtained an Owner's Policy for $80,000. Zibaee obtained a Loan Policy for $30,000. First Ameri-

can asserts that, pursuant to Erickson's Owner's Policy, it enjoys the option to pay or otherwise settle this claim:

6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF POLICY

In case of a claim under this policy, the company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of the Insurance

To pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations to the insured under this policy, other than to make the payment required, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

In addition, the policy contains a right to subrogation in the event First American opts to pay or settle the claim:

13. SUBROGATION UPON PAYMENT OR SETTLEMENT

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving theses rights or remedies.

In addition, the Owner's Policy provides for a set-off against the Owner's Policy for all payments made under the Loan Policy:

11. LIABILITY NONCUMULATIVE

It is expressly understood that the amount of insurance under the policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

The mortgage made by Erickson to Zibaee is an exception to the title insurance coverage written to Erickson.

By letter of May 21, 1991, the NJDEP directed the Township to notify all persons in the subsequent chains of title as to the prohibited nature of these sales transactions and to take corrective action. Neither Zibaee then nor Erickson upon purchase was ever notified as to the prohibited nature of the sales transactions.

On December 8, 1995, Louis Correale, the Township's Senior Sanitation Inspector, wrote to Erickson to inform him that it had come to the Township's "attention there may be a Green Acres encumbrance that prohibits the issuance of permits of any type for construction at the [subject premises] ..." and asking Erickson to contact the Township Administrator's Office to set up a meeting. By letter of January 25, 1996, counsel for Erickson, Dean A. Gaver, Esq., filed a Notice of Claim on Erickson's Owner's Policy.

First American asserts that during its investigation into the claim, it learned that the sale of similarly restricted properties by the Township had already been the subject of litigation in Federal District Court. In an unpublished opinion in *Samco Rockaway 90, Inc. v. Lawyers Title Insurance Corp.,* Docket No. 92–3598, 1995 WL 328141, Judge Wolin wrote:

> In this case, it is undisputed that Lot 36 was subject to Green Acres restrictions. Therefore, Rockaway did not have the statutory authority to sell Lot 36 to Barki. Without statutory authority, Rockaway's attempted sale of Lot 36 is ultra vires and void ab initio. *See Cedar Cove [Inc. v. Stanzione,* 122 *N.J.* 202, 214, 584 *A.2d* 784 (1991) ], *supra, Kaufman [Kauffman* v. North Haledon Borough, *229* N.J.Super. *349, 359, 551* A.2d *564 (Law Div.1988)],* supra; Ottawa v. Carey, *108* U.S. *110, 121, 2* S.Ct. *361, 27* L.Ed. *669 (1983). The only appropriate remedy is to rescind the sale and to return the parties to the status quo ante. Because Lot 36 and Lot 44 were sold in a single deed, the Court will void the transaction in its entirety.*
>
> "He who has nothing can give nothing." [quoting Dag Hammarskjold, *Markings* (1964) ] Thus, if Rockaway could not sell the property to Barki, Barki had nothing to sell to Samco. Thus, the Court will void the Barki–Samco transaction as well.

*Samco Rockaway 90, Inc. v. Lawyers Title Ins. Corp.,* Docket No. 92–3598, 1995 WL 328141, Opinion, at 6–7. By letter dated February 20, 1996, First American wrote to Erickson's counsel:

> Mr. Erickson's title is void and further litigation would be fruitless. There is nothing left to do but pay our insured under the policy. Therefore, this company elects to immediately tender the full amount due under the policy. A check will be available by the end of the week.

First American filed its Complaint on April 4, 1996 against the Township, Erickson, and Zibaee, seeking a declaratory judgment against

Donald M. Erickson

1. to terminate Owner's Policy No. 30983 by policy tender;

2. to cancel the mortgage to Zibaee "excepted" in this policy;

3. restoring title to the subject premises to the *status quo ante;*

Ata Jia–Zibaee

1. to terminate Loan Policy No. 104532;

2. to cancel the mortgage to Zibaee by payment from Erickson;

3. to disgorge any unjust enrichment;

4. restoring title to the subject premises to the *status quo ante;*

and the Township

1. to disgorge the $51,000 purchase price received from Zibaee in 1985, with interest;

2. to restore title to the subject premises to the *status quo ante.*

First American has since entered into an agreement with Erickson (1) under his Owner's Policy, indemnifying Erickson by a cash payment in the amount of $50,000, and (2) purchasing from Zibaee, Erickson's $30,000 mortgage. First American asserts that Erickson has subrogated his recoupment rights to First American to the extent of $50,000, and that it intends to cancel Erickson's mortgage as part of its insurance obligation to Erickson (why this has not been done to date, more than three years after the notice of claim, is not explained).

First American acquired Erickson's mortgage from Zibaee for the full amount due, $30,512.99. Thus, First American asserts, Zibaee has been made "whole," thereby terminating First American's Loan Policy No. 104532. Therefore, First American asserts, it is entitled to recoupment by way of "disgorgement" of the $51,000, plus interest, purchase monies held by the Township.

## RELIEF REQUESTED

Plaintiff seeks an Order granting summary judgment in its favor and against the Township; declaring and adjudging that the

deeds conveying the subject premises from the Township to Zibaee, from Zibaee to Zibaee, and Zibaee to Erickson are void *ab initio*; requiring the Township to pay $51,000, plus legal interest from November 5, 1985 to the date the judgment is paid, into the Clerk of the Court, in a constructive trust, for the benefit of First American for $50,000 and Erickson, for the remaining balance; directing the Clerk of the Court to pay such sums; and restoring title to the *status quo ante*.

## ANALYSIS

■ Because the approval of the New Jersey Department of Environmental Protection ("NJDEP") is a mandatory requirement before a municipality may convey a property subject to Green Acres restrictions, Rockaway's conveyance of the subject premises is void *ab initio*. The subject premises were included in a Green Acres Development Contract, dated May 28, 1981. Under the Green Acres Land Acquisition Act,

> [a] local unit which receives a grant under this act shall not dispose of or divert to a use for other than recreation and conservation purposes any lands held by such local unit for such purposes at the time of receipt of said grant without the approval of the commissioner and the State House Commission and following a public hearing by the local unit at least 1 month prior to any such approvals.

*N.J.S.A.* 13:8A–47(b). Accordingly, under this provision the Township was prohibited from selling or conveying the subject premises without the requisite State approvals. *See generally Cedar Cove Inc. v. Stanzione*, 122 *N.J.* 202, 584 *A.*2d 784 (1991).

■ A contract of sale for land subject to a Green Acres Development Contract is void and legally impermissible. *See Kauffman v. Mayor of Borough of No. Haledon*, 229 *N.J.Super.* 349, 365, 551 *A.*2d 564 (1988); *see also Samco Rockaway 90, Inc. v. Lawyers Title Ins. Co.*, Docket No. Civ. 92–3598, at 6, 1995 WL 328141 (D.N.J.1995) (funding that Rockaway's roughly contemporaneous sale of another lot subject to Green Acres restrictions was *ultra vires* and void *ab initio* ). In this case, because the Township failed to meet the statutorily mandated prerequisite in *N.J.S.A.* 13:8A–47(b)—Rockaway failed to ' obtain approval from the

NJDEP prior to the sale of the subject premises—the conveyance of the subject premises is *ultra vires* and void *ab initio*. Such failure must render all subsequent conveyances void and of no force or effect. Indeed, this is the conclusion that was drawn by Judge Wolin in an the unreported decision in *Samco, supra.* While not binding on this Court in any way, the *Samco* decision is soundly reasoned and, coincidentally, involves Rockaway Township's *ultra vires* transfer of another lot subject to the Green Acres contract at around the same time the Township made its unauthorized transfer to Zibaee. Both parties in this case address *Samco* in their briefs and a copy of Judge Wolin's opinion is a part of this motion record. Judge Wolin found that where the initial conveyance was void *ab initio*, the original purchaser had nothing to convey to a subsequent purchaser and the subsequent transaction was void as well. (*Samco*, at 7, 1995 WL 328141.) This is the only logical result.

The Township argues that because First American failed to discover a recorded instrument, the Green Acres Grant Development Contract, it should be barred from any claim and disgorgement remedy. The Township cites no case law to support its position, but does attempt to distinguish the result in *Samco, supra*, on the facts in that case. In *Samco*, the Green Acres restriction *was* found by the title searcher prior to closing in 1985, and the purchaser's lawyer and the lawyer for Rockaway were made aware of this situation. The transaction nevertheless went through, although there is no indication in the Opinion why the purchaser—or the Township—proceeded when they had actual knowledge of the recorded instrument. In 1988, the original purchaser entered into a contract to sell the lots to Samco, whose title company did not discover the Green Acres restrictions.

Samco did not discover the Green Acres restrictions until nearly four years later, and subsequently filed suit against Lawyers Title Insurance Company on July 7, 1992 in the Superior Court of New Jersey. The action was removed to the Federal District Court for the District of New Jersey on August 26, 1992 on the basis of

diversity of citizenship. As in the instant case, the subsequent purchaser, Samco, settled its claim with the title insurance company. As part of the settlement, Samco assigned its claims in connection with the property to Lawyers Title.

Despite the Township's and original purchaser's actual knowledge of the Green Acres restrictions and the subsequent purchaser's title insurance company's failure to detect the restrictions, the court nevertheless found the initial conveyance void *ab initio*, and thus the second transaction was similarly void. Quoting Dag Hammarskjold in *Markings*, Judge Wolin observed "He who has nothing can give nothing." The deliberate disregard of the restrictions on the part of the Township in that case played no part in the decision to void the conveyance; there was nothing to convey, just as here there was nothing to convey. The issue of subsequent marketability of title, which is the subject of a provision in the Resolution to which the Township points to bar any recovery on the part of anyone in the alleged (but actually nonexistent) chain of title, is moot where no title can be conveyed. The Township did not breach a contract; rather, what happened in 1985 was a failure of contract.

The Township argues further that First American's motion for "disgorgement" should be denied based upon its negligence in failing to discover the Green Acres contract, because "as between a public entity and a commercial title insurance company paid to search the public record, the public entity's position must be preferred as a matter of public record." The Township ignores its own failure to adhere to the law concerning a document to which it was party. This is more than mere inadvertence and more akin to a reckless disregard of facts within its actual knowledge. "Disgorgement" is a necessary result of declaring the conveyance void.

The Township next argues that First American, as subrogee of Erickson, cannot pursue Zibaee in contract by reason of the covenant against grantor's acts under circumstances where

Zibaee did nothing to adversely affect title. Since First American cannot stand in Zibaee's shoes, the Township argues, it is not in privity with Rockaway. Lack of privity is a defense in a breach of contract case; this is not a breach of contract case. *See Samco, supra,* at 7, 1995 WL 328141. This is an action to quiet title, and First American is in privity of estate with the Township by virtue of "mutual or successive relation to the same right in property." *See id.* (citing Black's Law Dictionary 1199 (6th ed.1990)). As such, First American has standing to seek to quiet title.

Again, the Township mischaracterizes this action as one in pure contract or tort, but the fact is that no contract exists as it failed *ab initio;* thus, all transactions flowing from the initial void conveyance have no effect, including the absence or existence of covenants in any documents purporting to, but not really, conveying title to this property. Therefore, the Township's arguments about what any other person or entity failed to do are irrelevant. This is not a *law* claim in contract. This is, essentially, an equitable action to quiet title and to make whole the parties who bore costs in connection with a void conveyance that would not have occurred but for the Township's *ultra vires* act. The proper goal is to restore every player to the position he would be in now but for that void transaction, as if it never occurred, which, in effect, it did not.

The Township advances yet another theory under which it argues that First American, as subrogee of Erickson, is barred from reimbursement under the Tort Claims Act, *N.J.S.A.* 59:1–1 to 59:14–4. This is not an action in tort, and actions for equitable relief are not subject to the Tort Claims Act. *See N.J.S.A.* 59:1–4 ("Nothing in this act shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees."); *Simon v. Oldmans Township,* 203 *N.J.Super.* 365, 371, 497 *A.*2d 204 (Ch.Div.1985) (holding that an equitable action for rescission and restitution is not subject to the Tort Claims Act); *see also Tontodonati v. City of Paterson,* 229 *N.J.Super.* 475, 481, 551 *A.*2d 1046 (App.Div.)

(finding municipality not entitled to immunity under Tort Claims Act from liability for issuance of invalid municipal tax sale certificates), *certif. denied* 117 *N.J.* 35, 563 *A.2d* 808 (1989); *Blazer Corp. v. New Jersey Sports & Exp. Auth.*, 195 *N.J.Super.* 542, 549, 480 *A.2d* 953 (Law Div.1984) (finding Tort Claims Act does not apply to contract cases or cases in which purely equitable relief is sought), *aff'd* 199 *N.J.Super.* 107, 488 *A.2d* 1025 (App.Div.1985).

The Township cites *Pinkowski v. Township of Montclair,* 299 *N.J.Super.* 557, 691 *A.2d* 837 (App.Div.1997), in support of its argument that *N.J.S.A.* 59:9–2e bars First American from recovery. *N.J.S.A.* 59:9–2e states, in part: "No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee." Judge Petrella, in *Pinkowski,* explained:

> The policy underlying *N.J.S.A.* 59:9–2e "reflects a recognition that profit-making insurance companies are in a better position to withstand losses which they contract for than are the already economically burdened public entities." ...
>
> ....
>
> Accordingly, *N.J.S.A.* 59:9–2e "has been construed to bar an action where an insurance company has paid its named insured the amount of a loss and then sought to recover that entire amount from a public entity." ...

299 *N.J.Super.* at 568, 691 *A.2d* 837 (citations omitted) (finding title insurance company, as subrogee, barred from bringing claim for negligence and trespass under the Act in action for inverse condemnation).

What the Township failed to include in this excerpt is the line just before the first one in this quote: "The immunity provided governmental entities under the Act is limited to tort based liability." *Id.* The instant case, unlike *Pinkowski,* does not assert tort liability for negligence or trespass or any other alleged tortious conduct. Thus, the Act does not bar First American's claims as they do not sound in tort.

■■■ Because the conveyances in this case are void *ab initio,* First American argues, the only appropriate remedy is to rescind the conveyances and return all parties to the *status quo ante.* To be sure, this was the remedy Judge Wolin found most appropriate

in the *Samco* case. *See Samco, supra*, at 6–7, 1995 WL 328141 ("The only appropriate remedy is to rescind the sale and to return the parties to the status quo ante.") To do any less in this case would unjustly enrich the Township, which has, in essence, always owned the property *and* had the use of Zibaee's initial purchase money for more than thirteen years.

Erickson subrogated his rights to First American to the extent of $50,000. As in *Samco*, the sale proceeds must be disgorged from Rockaway Township and paid to the Clerk of the Court to be held in a constructive trust for the benefit of First American, to the extent of the first $50,000, and Erickson, to the extent of the remaining balance. Zibaee has already received the benefit of his bargain, having been paid by First American all sums due under his purchase money mortgage (original balance of $30,000) and the $50,000 Erickson paid to him at closing.

## CONCLUSION

For all of the foregoing reasons, the Court must declare the conveyances of the subject promises void *ab initio;* direct Erickson to deliver a quit claim deed to the subject premises to the Township of Rockaway; and direct the Township to pay to the Clerk of the Court $51,000, plus prejudgment interest at the legal rate. The Clerk of the Court shall be directed to pay, from the fund in Court the sum of $50,000 to First American and the remaining balance to Erickson.