136 N.J. Super. 233 (1975)
345 A.2d 374
RALPH MARINO, PLAINTIFF,
v.
CITY OF UNION CITY, TOWNSHIP OF NORTH BERGEN, BUILD BETTER BOYS ASSOCIATION OF UNION CITY AND BUILD BETTER BOYS ASSOCIATION OF NORTH BERGEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
August 20, 1975.
*234 Mr. Roger M. Kahn for plaintiff (Messrs. Aronsohn, Kahn & Springstead, attorneys).
*235 Mr. George J. Kaplan for defendant City of Union City.
Mr. Ralph R. Feigelson for defendant Township of North Bergen.
BILDER, J.S.C.
This is a motion by an injured party for leave to file a notice of late claim against the City of Union City pursuant to the provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:8-9.
Plaintiff Ralph Marino alleges that he was injured in an accident on August 21, 1974 when, in the course of a baseball game in which he was playing catcher, a runner advancing from third base ran into him. As a result of this play at home plate plaintiff alleges he received severe injuries which left him a quadriplegic. Since the accident he has been almost continuously hospitalized in New York City.
Plaintiff further alleges that the severity of his injuries and the accompanying incapacitation were such that his failure to file a claim within the 90-day period provided for in N.J.S.A. 59:8-8 constitutes excusable neglect. He says that it was only recently that he contacted a New York attorney with respect to this matter and that New Jersey counsel was consulted promptly thereafter.
Defendant does not dispute the severity of the injuries but urges that plaintiff, though physically incapacitated, could have made known his claim much sooner by the use of third persons with whom he was regularly able to communicate.
The New Jersey Tort Claims Act provides a procedure which claimants are required to follow when seeking recovery from public entities based upon tortious conduct. N.J.S.A. 59:8-1 et seq. Included in this procedure are provisions requiring the claimant to provide the public entity with notice of the claim. Ibid. The notification requirements of the act have been recognized as serving two salutory purposes: (1) to allow a public entity at least six months for administrative review of a claim and thus provide *236 an opportunity for the settlement of meritorious claims prior to suit, and (2) to provide for prompt notification of a claim to permit adequate investigation and the preparation of a thorough defense. Reale v. Wayne Tp., 132 N.J. Super. 100, 109 (Law Div. 1975); Dambro v. Union County Park Comm'n, 130 N.J. Super. 450, 455 (Law Div. 1974); Comment to N.J.S.A. 59:8-3, Report of the Attorney General's Task Force on Sovereign Immunity, 230 (1972).
In order to implement its policy of prompt notification, the Legislature provided that claims must be filed within 90 days from the accrual of the cause of action or be "forever barred." N.J.S.A. 59:8-8. However, the Legislature recognized that circumstances might arise in which the needs of justice require that injured parties be able to get relief from what might be a harsh application of this rule. Therefore, the Legislature provided for relief by giving the Superior Court discretion to permit the filing of a late notice of claim at any time within one year after the accrual of the claim upon a showing by affidavit of sufficient reasons for the delay, provided the public entity is not substantially prejudiced thereby. N.J.S.A. 59:8-9.[1] In exercising that discretion the court must examine both sides of the coin: the reasons for plaintiff's failure to file within the 90-day period and the prejudice to the public entity resulting from the late notice.
*237 Thus, two issues are presented to the court. First, is the plaintiff's incapacity sufficient reason for his failure to file notice of claim within the 90-day period; and, second, will the granting of the requested relief substantially prejudice the public entity?
There are two reported dceisions in New Jersey that have passed on the question of what are sufficient reasons within the meaning of N.J.S.A. 59:8-9. In Lutz v. Semcer, 126 N.J. Super. 288 (Law Div. 1974), plaintiff sought leave to file a late claim on the grounds that he was unaware of the act and its 90-day notification requirement; that he was unaware of the seriousness of his injuries until some 4-1/2 months after the accident, and that his right to assert a claim for pain and suffering did not accrue until he had met the $1,000 threshold under N.J.S.A. 59:9-2(d). The court denied the motion for leave to file a late claim, finding the reasons advanced by plaintiff insufficient. As to the first ground the court said: "Mere ignorance of the law is not a sufficient basis to excuse compliance with the requirements of this remedial statute." Id. at 297. As to the second ground, the court noted that the plaintiff, an anesthesiologist, had considered his injuries of sufficient importance to cause him to notify the police surgeon of them, as well as to advise the municipal court at the traffic hearing. Id. at 296. In rejecting the third ground, the court noted that plaintiff's claim accrued at the time of the accident. Id. at 298. "Any claim which he wished to assert for his injuries, however slight, was required to be filed within 90 days pursuant to N.J.S.A. 59:8-8." Ibid.
In Wade v. N.J. Turnpike Authority, 132 N.J. Super. 92 (Law Div. 1975), the court found the reasons advanced by plaintiff for delay to be sufficient and, upon the further finding that the public entities were not substantially prejudiced thereby, granted the motion for leave to file a late claim. It said:
*238 Here there are reasons other than ignorance of the law, set forth in the affidavits and brief accompanying this motion. Those additional reasons include: the five month confinement of Marle P. Wade, due to injuries received in the accident; his unawareness of any claim against public entities; the fact that shortly after the accident he was removed from a New Jersey hospital and flown to Maine where he remained until after April 28, 1974 [six months after the accident]; and the late date at which New Jersey counsel was brought into the matter and apprised of the possible claims against public entities. Such reasons are certainly sufficient within the meaning of N.J.S.A. 59:8-9. [at 99]
Our courts have taken notice that the New Jersey Tort Claims Act was based upon California's Tort Claims Act and have looked to its case law for guidance. Dambro v. Union County Park Comm'n, supra, 130 N.J. Super. at 456; Lutz v. Semcer, supra, 126 N.J. Super. at 292.
In California the statute provides for late filing if, among other things, the claimant was physically incapable of timely filing. In its application this provision has been liberally construed to permit late filing where there is serious physical disability, even though the physical and mental condition did not preclude communicating with others or filing timely notice through third persons.
In Gonzales v. Merced Cty., 214 Cal. App.2d 761, 29 Cal. Rptr. 675 (D. Ct. App. 1963), plaintiff sought leave to file a late claim for injuries received while diving into a lake which resulted in his becoming a quadriplegic. The county appealed from the grant of plaintiff's petition, arguing that plaintiff was not mentally incapacitated during the period in which he failed to file his claim and thus could have obtained an attorney or had his wife act on his behalf to file for him within time. In affirming the grant of the leave to file a late claim the court held that there was no question that plaintiff was permanently physically incapacitated and that this was sufficient reason for the delay in filing. It went on to say:
Physical disability alone, as in this case, is sufficient without regard to mental capacity, and the law does not require someone else to act for him * * *. [29 Cal. Rptr. at 678]
*239 Nor need the physical disability be the sole reason for the delay. In Thompson v. Fresno Cty., 59 Cal.2d 686, 31 Cal. Rptr. 44, 381 P.2d 924 (Sup. Ct. 1963), a quadriplegic was denied leave to file a late claim where the trial court found her delay was caused by misrepresentations of the county's agents as to the true cause of her paralysis. In reversing, the Supreme Court said that plaintiff's uncontradicted allegations showed the delay was caused by her physical incapacity even though her ignorance of the cause of that disability may have been a contributing factor, and that the statutory relief did not require that the incapacity be the sole reason for the delay.
In O'Brien v. City of Santa Monica, 220 Cal. App.2d 67, 33 Cal. Rptr. 770 (D. Ct. App. 1963), the court allowed the filing of a late claim by a 77-year-old woman who suffered injury to her head and knees as the result of a bus door being closed on her and was thereafter either hospitalized or bedridden during the initial filing period. "From this it is reasonable to infer that during that time she was physically incapacitated and, as such, incapable of attending to the details of filing a claim." Id. at 774. Cf. Martin v. City of Madera, 265 Cal. App.2d 76, 70 Cal. Rptr. 908 (D. Ct. App. 1968), in which a contention of physical incapacitation was rejected where the court noted that it could be readily inferred that "plaintiff, for a substantial part of every day for six months, was reasonably capable of attending to his business affairs with the care and diligence of persons in average good health." Id. at 912.
Similar results have been reached in New York under statutory provisions similar to California's. See cases collected in Annotation, "Tort claims against public entity  notice", 44 A.L.R.3d 1108 at 1142 et seq. (1972).
The notion that serious physical disability without more can render a person incapable of making a claim is not new to our law. In Giacobbe v. Gassert, 29 N.J. 421, 425 (1959), the victim of a hit-and-run accident failed to give *240 notice, prerequisite to a claim, to the Unsatisfied Claim and Judgment Fund within the 90-day statutory period. He relied, therefore, upon a section of the statute tolling the time period while a person was "physically incapable" of giving the statutory notice. Plaintiff had serious fractures of both legs and during his period of alleged incapacity was in and out of hospitals, in and out of leg casts, restricted to the use of a wheel chair and finally on crutches. In rejecting the literal reading of "physical incapacity" urged by the Director of Motor Vehicles, our Supreme Court gave expression to the realities, stating:
* * * the act is to be liberally construed to advance the remedy, due regard being had for the protection of the fund and the realization of the essential legislative design; and to this end it suffices if, because of the physical injuries and their treatment and preoccupation with his affliction and fear of evil consequences, the victim of the mishap was not mentally and emotionally adjusted to his responsibility of giving notice; * * *. [at 425]
In Greene v. Director of Div. of Motor Vehicles, 65 N.J. Super. 242 (App. Div. 1961), certif. den., 35 N.J. 60 (1961), plaintiff was found "physically incapable" of giving notice even though he had actually filled out hospitalization forms, welfare forms and forms mailed to him by his union during the period. The court said that
While the extent of the claimant's injuries in Giacobbe was greater than in the case of plaintiff herein, there is no essential difference in the two cases as to the inferability of the injured parties' emotional and mental distress in consequence of the kind of injuries involved (in both cases comminuted compound leg fractures). The evidence in the present case discloses a continuous, mentally disturbing and distracting absorption of the plaintiff over the ever-present pain in his leg during the period between the two 1958 hospitalizations, if not even later. We know as a fact that the conditions responsible for the pain were not rectified until the resetting and bonegraft of the leg in 1959. And plaintiff was upset over economic problems affecting his family. Equally with the situation which concerned the plaintiff in Giacobbe must it fairly be concluded here that the plaintiff, because of his physical injuries and his continuous pain and *241 worry about his condition, `was not mentally and emotionally adjusted to his responsibility of giving notice' until some time after the December 1958 hospitalization. [at 247]
In the instant case the proofs show that plaintiff is a quadriplegic, paralyzed from the neck down and entirely dependent on others for his care; has been confined to hospitals in New York since the time of the accident, and has had substantial and significant economic concerns with respect to the hospital and medical expenses which finally resulted in his leaving the hospital a few days ago when his medical insurance ran out. The emotional and mental distress resulting from the kind of injury received by the plaintiff is self-evident. The court finds that the plaintiff's incapacity was sufficient reason for his failure to file the notice of claim within the 90-day period and that he has satisfied the requirements of N.J.S.A. 59:8-9 in this regard.
Turning to the second issue, it is the opinion of the court that the public entity has not been substantially prejudiced by the delay in the filing of a notice of claim. The accident which gives rise to this claim was not an obscure event, unknown and unnoticed by all but plaintiff. Apparently this was a matter of much publicity at the time and, indeed, was the subject of a number of local public fund-raising efforts to aid plaintiff with the financial problem which his injury created.
Plaintiff's motion for leave to file a notice of late claim is granted.
NOTES
[1] N.J.S.A. 59:8-9 provides:

"A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion based upon affidavits showing sufficient reasons for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act; provided that in no event may any suit against a public entity arising under this act be filed later than 2 years from the time of the accrual of the claim."