194 N.J. Super. 607 (1984)
477 A.2d 454
BLANCA HURTADO DEMENDOZA, PLAINTIFF,
v.
NEW JERSEY TRANSIT BUS OPERATIONS, INC. AND NEW JERSEY TRANSIT CORP., DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
March 20, 1984.
*609 John C. Caniglia, for plaintiff (Thomas A. DeClemente, attorney).
Laura Eytan, Deputy Attorney General, for defendants (Irwin I. Kimmelman, Attorney General of New Jersey, attorney) Lawrence Bunis, Deputy Attorney General, on the brief.
COBURN, J.S.C.
This matter is before me on plaintiff's motion for leave to file late notices of claim under the New Jersey Contractual Liability *610 Act, N.J.S.A. 59:13-1 et seq., and the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
Both causes of action accrued when plaintiff sustained personal injuries while riding as a passenger in defendants' bus. It had stopped short to avoid a collision with an unidentified truck which for purposes of this case must be treated as an uninsured vehicle. The contract action is based upon the obligation of the self-insured state agency defendants to provide the equivalent of uninsured motorists protection for their passengers. Mortimer v. Peterkin, 170 N.J. Super. 598 (App.Div. 1979). The tort action rests on allegations of negligence regarding operation of the bus. The accident occurred December 28, 1982. The notice of motion was filed on December 28, 1983. Defendants contend that this court does not have discretion to grant relief because the motion, though filed within a year of the accident, was not returnable until after a year. Resolution of this aspect of the controversy projects an issue of statutory construction heretofore unaddressed by the courts of New Jersey. Defendants also argue that plaintiff has failed to show sufficient reasons for her original failure to file timely notices of claim.
The pertinent language of the New Jersey Contractual Liability Act and the New Jersey Tort Claims Act with respect to the issues is essentially the same. The former provides:
A claimant who fails to file notice of his claim within 90 days as provided in section 5 of this chapter, may, in the discretion of a judge of the Superior Court of the State of New Jersey, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the State has not been substantially prejudiced thereby. Application to a judge of the superior court for permission to file a late notice of claim shall be made upon motion based upon affidavits setting forth sufficient reason for the failure to file his notice of claim within the period of time prescribed by section 5 of this chapter. [N.J.S.A. 59:13-6; emphasis supplied.]
The latter provides:
A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the superior court, be permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity has not been substantially *611 prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion based upon affidavits showing sufficient reasons for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act; provided that in no event may any suit against a public entity arising under this act be filed later than 2 years from the time of the accrual of the claim. [N.J.S.A. 59:8-9; emphasis supplied.]

I. TIMELINESS OF THE MOTION
Read literally, the italicized words of both statutes require filing of the judicially permitted notice of claim within one year. However, defendants concede that if the motion were originally returnable within the year, the court could subsequently issue a valid order permitting a claim filing after a year. Thus, they properly recognize that literalism in this context would produce anomalous results. When literal application would yield anomaly, our courts expand or limit the legislature's words "according to the manifest reason and obvious purpose of the law." Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956); State v. DeVincenzo, 189 N.J. Super. 201, 203-204 (Law Div. 1983). In that regard it is noteworthy that literal application of the language under consideration has been rejected implicitly in S.E.W. Friel Co. v. N.J. Turnpike, 73 N.J. 107, 110-111 (1977), Keller v. County of Somerset, 137 N.J. Super. 1 (App.Div. 1975), Wade v. N.J. Turnpike Authority, 132 N.J. Super. 92 (Law Div. 1975), and Marino v. Union City, 136 N.J. Super. 233 (Law Div. 1975). All of those cases involve late claim motions filed and returnable within the year, but granted thereafter.
Defendants' position rests largely on references by the Supreme Court in S.E.W. Friel Co., supra, to the fact that in that case the motion was originally returnable within the year. 73 N.J. at 111, 120. I am satisfied that those references were not intended to express a deliberate policy on this issue to be followed by the trial courts. Compare, State v. Rush, 46 N.J. 399, 416 (1966), with In re Nicholson, 69 N.J. Super. 230, 235-236 (App.Div. 1961). Furthermore, giving weight to the return date of the motion would be wholly inconsistent with *612 Campbell v. Union Beach, 153 N.J. Super. 434 (App.Div. 1977), in which the court held that for purposes of the statute of limitations a third party complaint is deemed filed when a motion seeking permission to do so is filed. The court said:
The result of a given case then need not turn on the vagaries of when the motion is heard, when or if a formal third party complaint is actually filed after leave is granted, when the order is signed and filed, the postponement of motions beyond the critical date, the dismissal and reinstatement of motions, or when process is issued, and the third-party complaints are actually served and notice received. [Campbell at 438.]
Finally, the hypertechnical approach advanced by defendants contravenes the philosophy adopted by the Supreme Court in S.E.W. Friel Co., supra, that doubts regarding whether a claim may be filed should be resolved whenever possible so that cases may be decided on the merits. 73 N.J. at 122. Therefore, I hold that a motion filed within a year of accrual of the claim is timely under both N.J.S.A. 59:13-6 and N.J.S.A. 59:8-9.[1]

II. INSUFFICIENCY OF THE REASONS FOR NOT FILING WITHIN 90 DAYS
On this aspect of the case some additional facts must be noted. Plaintiff retained her former attorney within two weeks of the accident and certainly no later than January 12, 1983. By then he had obtained a copy of the police report which described the bus owner as "N.J. Transit Bus Operations, Inc.", a "self-insured." Former counsel certified that his "initial impression was that the driver of the unidentified vehicle was primarily at fault for the accident." Obviously, he had some awareness that the bus driver might have been negligent, too. Rather than pursue investigation along that line, he chose to file a claim with the New Jersey Unsatisfied Claim and Judgment Fund on the plainly incorrect theory that through that agency he could press his claim based on the conduct of the unidentified vehicle driver. The official form provided for that *613 purpose, and used by former counsel in this case, warned that collection from the fund is prohibited when the claim is covered by uninsured motorists coverage. It further advised: "uninsured motorists coverage is available to all persons in an insured vehicle." And on January 28, 1983, the Unsatisfied Claim and Judgment Fund wrote to former counsel specifically advising that the claim had been marked ineligible since "the vehicle in which your client was a passenger should have Uninsured Motorists Coverage." At this time former counsel still had almost 60 days left in which to file claims with the defendants under the subject acts. Thereafter, precisely when is not clear, he called the Fund and learned that the bus was owned by a State agency. On the 91st day after the accident, he allegedly wrote a claim letter[2] to defendants. Defendants deny receipt. On November 17, 1983, a claim letter[2] was sent by present counsel to whom defendants replied by letter of December 7, 1983, in which they asserted that the claim was untimely and that plaintiff would have to apply to court if she wished to pursue the matter.
The previously quoted provisions of both the Contractual Liability Act and the Tort Claims Act forbid late claim filings unless sufficient reasons appear. It is firmly established that the sufficiency of the reasons is to be judged with great liberality, resolving all doubts in favor of the application, so that whenever possible cases may be heard on their merits. S.E.W. Friel Co., supra, 73 N.J. at 122; Kleinke v. Ocean City, 147 N.J. Super. 575, 579-580 (App.Div. 1977); Dyer v. Newark, 174 N.J. Super. 297 (App.Div. 1980).
There is no respect in which plaintiff's conduct may be faulted. Unfortunately, the same cannot be said about her former attorney. The question, then, is whether in the circumstances of this case plaintiff's claims should be barred by her *614 attorney's derelictions in failing to gather the relevant facts, failing to research the applicable law, and failing to file the claims within the 90 days.
Generally an attorney's conduct in relation to the processing of claims under the subject acts is imputed to the client. In re Matter of Roy, 142 N.J. Super. 594, 599-601 (App.Div.), certif. den. 71 N.J. 504 (1976); Keller v. Somerset Cty., 137 N.J. Super. 1, 12 (App.Div. 1975); Lutz v. Semcer, 126 N.J. Super. 288, 293-295 (Law Div. 1974). Those cases further demonstrate that mere ignorance of the law on the attorney's part does not excuse compliance with the acts' requirements. On the other hand, Lutz, supra, indicates that a mistake of law may constitute excusable neglect if the misconception is reasonable and there is some justification for a lack of determination of the correct law. Lutz, 126 N.J. Super. at 294.
Even assuming that a reasonable attorney might have made the error of filing initially with the Unsatisfied Claim and Judgment Fund, no excuse appears for former counsel's subsequent inaction. He knew for almost 60 days before the time limit that his client had a possible negligence action and a perfectly valid uninsured motorists claim against defendant New Jersey Transit Bus Operations, Inc. Still he did nothing to discover this defendant's nature as a state agency, nor did he even attempt to communicate with it. Counsel's inattention to his client's cause was not a mistake of law. Indeed, on the submitted record it would not appear to be anything other than negligence.
In reaching the conclusion that sufficient reasons are not present in this case, I have considered but found inapplicable these words of Justice Pashman, writing for the majority in Galligan v. Westfield Center Service, Inc., 82 N.J. 188, 194 (1980):
The sole cause of plaintiff's failure to commence an action properly is his former counsel's mistaken notion of the rudiments of federal court jurisdiction. We have previously noted that `it seems inequitable that an injured person ... *615 should be denied his day in court solely because of his ignorance, if he is otherwise blameless.' Lopez [v. Swyer,] 62 N.J. [267] at 274. When the ignorance is not the plaintiff's, but that of his previous attorney, it would be even more unjust to deny him an opportunity to prosecute his cause of action.
The original Galligan complaint had been timely filed in federal court, but was dismissed for lack of jurisdiction. Twenty-two days after the state statute of limitations had run, but while the federal action was still pending, the action was refiled in the state court. The Supreme Court held that the statute was not a bar. The case is distinguishable in that the Supreme Court was able to find minimal substantial compliance with the statute of limitations since the defendants had been served with the federal complaint within time. In addition, the state complaint had been filed before the federal complaint was dismissed and thus the Court could find that none of the purposes of the statute of limitations would be served by dismissing the cause of action. By contrast, were I to excuse the dereliction here the 90 day provision would be rendered meaningless in any case which was timely brought to an attorney's office and thereafter ignored by him. That would entirely undercut the legislative purpose of compelling early notice "to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." Lutz v. Gloucester Tp., 153 N.J. Super. 461, 466 (App.Div. 1977). Therefore the motion is denied.[3]
NOTES
[1] The same result has been reached by application of the doctrine of nunc pro tunc. Murray v. Barnegat Lighthouse, 192 N.J. Super. 399 (Law Div. 1984).
[2] These letters were nullities. Priore v. State, 190 N.J. Super. 127, 130 (App. Div. 1983).
[3] This ruling does not foreclose the filing of a tort action against the bus driver individually. Lutz v. Semcer, supra, 126 N.J. Super. at 300. Regarding the claims against the state agencies, plaintiff's counsel did not avail himself of the opportunity, which I offered in my letter of February 21, 1984, to argue that the notice to the Unsatisfied Claim and Judgment Fund constituted substantial compliance with the 90 day provisions of the acts, Cf. Zamel v. Port of N.Y. Authority, 56 N.J. 1 (1956), thereby obviating the necessity of obtaining the relief requested herein; i.e., permission to file late claims. Since that may have been a tactical choice, I will not address the issue. That course appears appropriate, for if a complaint is filed that issue will have to be resolved only if the State pleads as an affirmative defense lack of substantial compliance. Absent prejudice, and none has been asserted to date, one might well expect the State to eschew as a matter of policy any attempt to prevail over one of its citizens on a technical ground which in no way serves the interests of justice.