BERNARD LAMB ET AL., PLAINTIFFS–APPELLANTS, v. GLOBAL LANDFILL RECLAIMING, ET AL., DEFENDANTS, AND STATE OF NEW JERSEY; BOROUGH OF CARTERET; CITY OF ELIZABETH; BOROUGH OF ENGLISHTOWN; TOWNSHIP OF MARLBORO; BOROUGH OF METUCHEN; BOROUGH OF MIDDLESEX; TOWNSHIP OF MIDDLETOWN; TOWNSHIP OF OLD BRIDGE; NEW JERSEY TURNPIKE AUTHORITY; CITY OF RAHWAY; BOROUGH OF ROSELLE PARK; BOROUGH OF SAYREVILLE; CITY OF SOUTH AMBOY; AND BOROUGH OF SPOTSWOOD, DEFENDANTS–RESPONDENTS.

Argued May 2, 1988—Decided July 19, 1988.

*Thomas F. Chansky* argued the cause for appellants (*Lynch, Martin & Philibosian,* attorneys; *John G. Cito,* on the brief).

*Dennis A. Estis* argued the cause for respondents Borough of Carteret, et al. (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys; *Dennis A. Estis* and *Stasha W. Cohen,* on the brief).

*Jerome J. Convery,* Township Attorney, argued the cause for respondent Township of Old Bridge.

*James J. Ciancia,* Assistant Attorney General, argued the cause for respondent State of New Jersey (*Cary Edwards,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Scott E. Rekant,* Deputy Attorney General, on the brief).

*Louis N. Rainone* submitted a letter in lieu of brief on behalf of respondent Borough of Sayreville.

The opinion of the Court was delivered by

GARIBALDI, J.

This interlocutory matter requires the Court to determine whether the trial court abused its discretion by permitting plaintiffs in a toxic tort action to file a notice of late claim pursuant to § 59:8–9 of the New Jersey Tort Claims Act (the "Act"), *N.J.S.A.* 59:1–1 to 12–3. The Appellate Division re-

versed the judgment of the trial court, finding that plaintiffs failed to state sufficient reasons to warrant late filing of notice of claim against governmental entities. *Lamb v. Global Landfill*, 219 *N.J.Super.* 446 (1987). We now reverse and reinstate the order of the trial court permitting plaintiffs to file a late notice of claim.

## I.

In March 1986, residents of four apartment complexes located in the Township of Old Bridge discovered that many tenants complained of common unexplained medical conditions and illnesses. These conditions included gastrointestinal disorders, neurological defects, skin rashes, various forms of cancer, a learning disability among school children, as well as other illnesses. The apartment complexes affected by the unexplained illnesses are located adjacent to the Global Landfill (Global) and the Sommers Brothers Estate. Global began to operate as a dumping site in 1968, and was used by public and private entities until its closing in 1984. Given their proximity to the waste site, residents wondered whether the unexplained illnesses could be attributable to pollutants being emitted by the landfill. Bernard and Christine Lamb, residents of the London Terrace apartment complex near Global, collected soil samples from the landfill, and then submitted the samples to a northern New Jersey laboratory for analysis. The results of the preliminary testing revealed that there was a hazardous amount of volatile organics in the landfill. *Citizens Seek to Spur DEP to Act on Dump Concerns, The Sentinel,* Oct. 15, 1986, at 6, col. 1. Township officials and the New Jersey Department of Environmental Protection (the "DEP") assured the Lambs that the landfill did not pose a health hazard.[1]

---

[1] In April 1988, United States Senator Frank Lautenberg of New Jersey announced that the federal government's Environmental Protection Agency was preparing to add ten New Jersey sites, including Global Landfill, to its National Priority List for action under the superfund hazardous waste cleanup

Notwithstanding these assurances, in March 1986 the Lambs and others founded a community interest group known as Citizens Helping Environmental Cleanup (CHEC). CHEC then continued to pursue its own investigation of the landfill's toxicity.

Also in March 1986, CHEC contacted a law firm in order to determine what legal remedies were available to investigate and clean up the landfill, as well as to compensate those who may have been injured through exposure to toxic waste. The law firm, in turn, retained Southwest Occupational Health Services (SOHS), a hazard management firm, to analyze soil, water, and other material samples taken from the landfill. The purpose of SOHS's investigation was to determine whether hazardous waste components existed at the site, and, if so, whether further investigation would be warranted. On April 12, 1986, an employee of SOHS conducted an on-site inspection of the landfills. The investigator identified various potential soil and water sampling sites. On May 12 and 13, 1986, SOHS revisited the site to collect soil and water samples for analysis. SOHS sent the samples to the NUS Corporation, Laboratory Services Division, in Houston, Texas. The laboratory test showed that various toxic wastes, pollutants, and other dangerous substances were present in the area.

SOHS prepared a report of the laboratory results that CHEC's law firm received on July 29, 1986.[2] Following receipt

---

program. According to Sen. Lautenberg, "[f]or the residents of these communities [placement on the National Priority List] marks an important step in restoring the safety of their environment." *EPA Ready to Add Ten Jersey Tracts to Superfund Cleanup Priority List, Star–Ledger,* Apr. 14, 1988, at 9, col. 1.

[2]This fact is in dispute. In its brief before the Appellate Division, plaintiffs claimed that they received SOHS's report in June 1986. Plaintiffs claim that June was given as the date of receipt of the report as a result of an oversight or mistake. Defendants contend that the results of SOHS's tests were communicated to plaintiffs no later than June 1986.

of the report, CHEC and the law firm held several town meetings. CHEC members and their attorneys discussed the findings of the report with the residents, informing them that their medical complaints may have been caused by priority pollutants buried in the landfill. While the laboratory report confirmed the presence of toxic pollutants, CHEC was unfamiliar with the identity of those individuals, firms, and entities responsible for the existence of the pollutants.

In order to determine the identities of those responsible for creating the toxic conditions at the landfill, CHEC's law firm conducted a two-month investigation in the Trenton office of the DEP. Members of the law firm made numerous trips to that office in order to examine the DEP's file concerning Global. By the end of August 1986, after reviewing the DEP files, the firm compiled a list of most of the entities responsible for dumping waste at the landfill, including various public entities.[3]

In addition to determining the identities of those who may have contributed to the toxic conditions at the landfill, CHEC and its attorneys engaged in other organizational and investigative activities during the time between March 1986, when the Lambs received the results of the preliminary laboratory results, and October 14, 1986, when plaintiffs filed a motion seeking leave to file a late notice of claim. On April 17, 1986, plaintiffs' counsel, after noting that a lawsuit had not yet been filed, is quoted as saying, "We're still investigating and collecting information. We need medical information from residents and toxicological reports of what's in the landfill, so we can test

---

[3]In addition to the State of New Jersey, plaintiffs eventually gave notice of claim to Middlesex County, the municipalities of Atlantic Highlands, Carteret, East Brunswick, Edison, Elizabeth, Englishtown, Hazlet, Holmdel, Keansburg, Keyport, Matawan, Marlboro, Metuchen, Middlesex, Middletown, Milltown, Monroe, Old Bridge, Perth Amboy, Rahway, Roselle Park, Sayreville, South Amboy, Spotswood, Woodbridge, and the New Jersey Turnpike Authority. The State of Pennsylvania was also named as a party.

the people to see if there is a link." *Neighbors See Threat from Global, News Tribune,* Apr. 17, 1986, at 1, col. 1.

Plaintiffs' counsel designed a medical questionnaire whose purpose was to solicit from area residents information concerning their various health-related complaints. Plaintiffs hoped to determine whether there was in fact a correlation between the higher incidence of health problems and their proximity to the landfill. Newspaper accounts indicate that various parties, including the Sayreville Health Department, were distributing these questionnaires in Old Bridge and Sayreville as late as May 1986. *See Group Eyes Possibility of Link Between Landfill and Illness, The Suburban,* May 14, 1986, at 29, col. 1; *Sayreville Distributes Questionnaire, News Tribune,* May 9, 1986, at 37, col. 1; *DEP Awaiting Plan to Remove Chemical Drums, News Tribune,* May 5, 1986, at 4, col. 1.

CHEC's organizational activities during this time period involved town meetings and informational sessions with area residents, as well as ongoing communications with Township and state officials, including the DEP. *See Global Test Results Expected, News Tribune,* Aug. 18, 1986, at 4, col. 1; *Azzarello Awaiting Results from Tests at Global Site, News Tribune,* Aug. 7, 1986, at 4, col. 2; *Residents' Concerns Over Landfill Aired, News Tribune,* Apr. 30, 1986, at 4, col. 1. As late as August 26, 1986, one news account reported that CHEC was then "calling for free health screenings for area children and more detailed tests of the Global–Sommer properties by the DEP...." *Meetings Urged on Findings of Global, News Tribune,* Aug. 26, 1986, at 4, col. 1.

On October 14, 1986, after having collected the necessary data, the plaintiffs filed a motion seeking leave to file a late notice of claim against twenty-eight public entities, pursuant to § 59:8–9 of the Act. Section 59:8–9 permits a late notice of claim to be filed within one year of the accrual of a cause of action against a public entity, provided that the public entity is not prejudiced thereby and provided that the motion for such

relief is based on affidavits showing "sufficient reasons" for failure to file within the ninety-day period normally required by § 59:8–8. Plaintiffs' attorneys filed two identical affidavits, in which they (1) described the circumstances leading to contamination of the environment, (2) listed the various maladies affecting the residents, and (3) stated that "plaintiffs were unable to comply with the notice of claim requirement within the ninety day period because of the severity of their injuries and inability to investigate the circumstances surrounding the complained of occurrence."

On November 10, 1986, the trial court granted plaintiffs' motion to file a late notice of claim based solely on the papers then before it. On December 5, 1986, the court issued a written opinion in support of its decision. In granting plaintiffs' request to file a late notice of claim, the trial court noted that "New Jersey courts have not enumerated factors or circumstances that constitute 'sufficient reasons' " for delay. The trial court further stated that "a standard of liberality is applied in assessing the reasons for delay ... resolving all doubts in favor of the applicant so that whenever possible cases may be heard on the merits." According to the trial court, "[t]he only limitation that the courts recognize in reviewing 'sufficient reasons,' is that plaintiff's application to file a late notice of claim must be supported by a factual showing which leads to a considered judgment." The court also noted that great deference is accorded to the judgment of the trial court. Against this legal background, the trial court concluded

that plaintiffs' motion to file a late notice of claim should be granted. *A cause of action based on toxic waste presents a unique circumstance because it is difficult to determine the date of accrual. This Court determined that the nature of the circumstances rendered the date of accrual as March 1986. This Court further concluded that the severity of plaintiffs' injuries, plaintiffs' efforts to investigate the activities at GLOBAL LANDFILL and the very nature of the tort involved established "sufficient reasons" for the plaintiffs' delay in filing this motion.* In addition, this Court concluded that defendants were not substantially prejudiced by plaintiffs' delay in filing this motion because defendants had constructive notice of a potential lawsuit. [Emphasis added.]

On January 5, 1987, the Appellate Division granted the public entities' motion for leave to appeal the trial court's order and reversed the trial court. The court first noted that "[c]ases in which sufficient reasons for noncompliance with the notice requirement have been found are notable for the detailed information supplied concerning the injured party's inability to act within the 90 days." 219 *N.J.Super.* at 449. According to the court, "relaxation of the 90 day requirement is permitted only 'upon a showing of reasons which may be deemed sufficient on judicial scrutiny....'" *Id.* at 450–51 (citations omitted). The court concluded that "[r]easons have not been here shown sufficient to relax the statutory requirement of 90 days notice to the public entities." *Id.* at. 451. The court found that the reasons given did "not provide a factual basis from which a court may reach its own independent determination as to whether the reasons for late filing were actually excusable under judicial standards." *Ibid.* The court criticized plaintiffs for failing in their affidavits "to describe the extent of disability sustained or to explain how the illnesses interfered with the giving of timely notice by each plaintiff."[4] *Ibid.* The court went on to say that "[t]he fact that the plaintiffs are suing *en masse* does not obviate the necessity of an explanation from each for noncompliance with the 90 day notice requirement." *Ibid.*

The Appellate Division concluded that "by June [1986] plaintiffs should reasonably have known of the facts forming the basis of their cause of action." 219 *N.J.Super.* at 451. The

---

[4]*N.J.S.A.* § 59:8–4 controls the contents of a notice of claim. According to that section, a notice of claim must contain, among other things, only a *"general* description of the injury, damage or loss incurred *so far as it may be known* at the time of presentation of the claim." (Emphasis added). Because the actual notice of claim calls for only a *general* description of the injuries alleged, it is unreasonable for the Appellate Division to require plaintiffs' affidavit in support of a notice of late claim to contain such detailed information regarding *each* plaintiff's injuries. Such a requirement would be unduly harsh at this early stage of the case, *i.e.,* before plaintiffs even file suit.

court chose that date as the accrual date because it was then that plaintiffs claimed receipt of the report of the soil analysis from SOHS. Because plaintiffs did not file their motion for late claim until October 1986, and because no sufficient reasons were provided to excuse delay, the Appellate Division reversed the order of the trial court.

The Appellate Division noted an additional deficiency in plaintiffs' motion. The court concluded that plaintiffs' supporting affidavits failed to comply with *Rule* 1:6–6, which requires that such affidavits be " 'made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify....' " 219 *N.J.Super.* at 452. Because the affidavits submitted by plaintiffs were prepared by the attorneys, the court found they violated the further portion of *Rule* 1:6–6, which provides that " 'affidavits by attorneys of facts related to them by and within the primary knowledge of their clients constitute, in effect, objectionable hearsay.' " *Ibid.*

Plaintiffs filed a motion for reconsideration with the Appellate Division. The court denied that motion. We granted plaintiffs' motion for leave to appeal, and later denied defendants' motion for reconsideration. We likewise denied the Attorney General's motion for summary disposition.

## II.

We do not undertake herein to determine the accrual date of plaintiffs' cause of action. By virtue of their motion seeking to file a late notice of claim, plaintiffs have conceded that their action accrued more than ninety days prior to their attempt to serve notice on the public entities. We thus accept the trial court's finding that plaintiffs' action accrued in March 1986. Nonetheless, while we recognize that plaintiffs' attempt to file a *late* notice of claim contains an implicit concession that their cause of action accrued more than ninety days prior to October 14, 1986, we note that this Court's subsequent decisions in *Vispisiano v. Ashland Chemical Co.*, 107 *N.J.* 416 (1987), and

*Ayers v. Jackson Township*, 106 *N.J.* 557 (1987), would have provided plaintiffs with some important guidance regarding the issue of accrual of a toxic tort cause of action. In light of those decisions, it is possible that a *late* notice of claim would not have been necessary.

In *Vispisiano*, the plaintiff sought recovery of damages for medical complications and bodily injuries resulting from his exposure to toxic chemical wastes during his employment at a toxic-waste disposal site. After a *Lopez* hearing, plaintiffs' complaint against numerous parties was dismissed as having been filed beyond the time allowed by the applicable statute of limitations, and the Appellate Division affirmed. We then reversed. In applying the "discovery" rule in the toxic tort context, we recognized the difficulties inherent in diagnosing injuries caused by toxic substances, as well as in discovering the cause of such injuries. One of the factors contributing to such difficulties is the latent nature of the harm caused. As we observed in *Vispisiano*, " '[t]oxic tort victims do not become aware of their injuries until decades after the tortious act.' " 107 *N.J.* at 428. Discovery of the injury is further complicated by the fact that " 'many diseases which are induced by or aggravated by exposure to toxic substances are similar to diseases which are not related to that particular toxic exposure.' " *Id.* at 429 (quoting G. Nothstein, *Toxic Torts: Litigation of Hazardous Substance Cases*, § 4.01 at 105 (1984)). Further complicating matters is the extraordinarily large number of chemicals used in commerce today. *Ibid.* In light of these inherent difficulties, we concluded in *Vispisiano* that "the critical question ... is when Vispisiano discovered or should have discovered, by exercise of reasonable diligence and intelligence, that the physical condition of which he complains was causally related to his exposure to chemicals at [the toxic-waste disposal site]." *Id.* at 427–28; *see also Ayers v. Jackson Township, supra,* 106 *N.J.* at 582, (discovery rule *"tolls the statute until the victim discovers both the injury and the facts suggesting that a third party may be respon-*

*sible*" (emphasis added)); "Developments in the Law—Toxic Waste Litigation," 99 *Harv.L.Rev.* 1458, 1606–07 (1986) (hereinafter "Developments—Toxic Waste").

Given our recognition of the difficulties encountered in applying the "discovery rule" in the toxic tort context, it appears that the plaintiffs' cause of action would not have accrued until they discovered their injuries and established that those injuries were caused through exposure to toxic substances contained in the landfill. With the benefit of hindsight and our subsequent pronouncements in the area of toxic torts, the March 1986 accrual date appears somewhat premature, especially given the preliminary nature of plaintiffs' findings at that time concerning area residents' injuries and the toxic content of the landfill. Nonetheless, the fact that plaintiffs sought the advice of counsel and obtained preliminary laboratory results indicating that the landfill contained toxic substances at that time lends support to the trial court's determination. We thus defer to the trial court's choice of March 1986 as the accrual date, and seek only to determine whether plaintiffs stated sufficient reasons to justify a late filing under *N.J.S.A.* 59:8–9.

The relevant "notice of claim" provisions of the Act appear at *N.J.S.A.* 59:8–8 and 59:8–9. Section 59:8–8 provides that a notice of claim shall be filed no later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, a claimant may file suit in an appropriate court. A claimant will be permanently barred from recovering against a public entity if (1) he or she fails to file claim with the public entity within ninety days of accrual of the claim and is not entitled to file a late notice of claim under § 59:8–9; (2) two years have elapsed since accrual; or (3) claimant or his or her representative entered into settlement agreement with respect to the claim.

The purposes for the notice of claim provisions are expressed in the Comment to § 59:8–3:

The purpose of the claims notification requirement in this Chapter is two-fold: (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.

These purposes have been given judicial recognition. *See S.E.W. Friel Co. v. N.J. Turnpike Auth.*, 73 *N.J.* 107, 118 (1977); *Keller v. Somerset County*, 137 *N.J.Super.* 1, 12 (App. Div.1975); *Marino v. Union City*, 136 *N.J.Super.* 233, 235–36 (Law Div.1975); *Reale v. Wayne Township*, 132 *N.J.Super.* 100, 109 (Law Div.1975).

Notwithstanding these purposes, the Legislature sought to address the sometimes harsh impact of the ninety-day notice of claim requirement by including § 59:8–9, a remedial provision that grants a court discretion to extend time for filing under the following circumstances:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may *in the discretion of a judge of the superior court,* be permitted to file such notice at any time within 1 year after the accrual of his claim *provided that the public entity has not been substantially prejudiced thereby.* Application to the court for permission to file a late notice of claim *shall be made upon motion based upon affidavits showing sufficient reasons for his failure to file notice of claim within the period of time prescribed by section 59:8–8 of this act;* provided that in no event may any suit against a public entity arising under this act be filed later than 2 years from the time of accrual of the claim. [Emphasis added.]

The granting or denial of permission to file a late claim within the one year period is a matter left to the sound discretion of the trial court, and will be sustained on appeal in the absence of a showing of an abuse thereof. *Kleinke v. Ocean City*, 147 *N.J.Super.* 575 (App.Div.1977); *Lutz v. Gloucester Township*, 153 *N.J.Super.* 461 (App.Div.1977); *In re Roy*, 142 *N.J.Super.* 594 (App.Div.), certif. den., 71 *N.J.* 504 (1976); *Keller, supra*, 137 *N.J.Super.* at 5.

Permission to file a notice of late claim is contingent on two showings being made. The court must determine first whether there are sufficient reasons for the claimant's failure to file within the ninety day period specified by § 59:8–8, and second, whether the public entity will be substantially prejudiced by the

granting of the request. *See Roy, supra,* 142 *N.J.Super.* at 599; *Keller, supra,* 137 *N.J.Super.* at 5.

A. *Sufficient Reasons*

In *S.E.W. Friel Co., supra,* 73 *N.J.* 107 this Court addressed for the first time the "sufficiency of reasons" requirement under § 59:8–9 of the Act. There, this Court expressly adopted the approach of the California courts insofar as they "have examined more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, 'to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application.' " *Id.* at 122 (quoting *Viles v. California,* 66 *Cal.*2d 24, 423 *P.*2d 818, 821, 56 *Cal.Rptr.* 666, 669 (1967)); *see also Dyer v. Newark,* 174 *N.J.Super.* 297, 300 (App.Div.1980) (following Supreme Court's directive in *S.E.W. Friel Co., supra* ). The Court followed the California approach because our state's Tort Claims Act is modeled after the California Tort Claims Act of 1963. 73 *N.J.* at 122.

Because the Act is silent about what constitutes "sufficient reasons" for failure to file a timely notice of claim, each case must be determined on the basis of its own facts. Our courts have found sufficient reasons to exist where there has been excusable neglect or mistake. *See Kleinke, supra,* 147 *N.J.Super.* at 580 (complex of factors created excusable neglect as tested by standard of reasonably prudent person under similar circumstances); *Zwirn v. Hudson County,* 137 *N.J.Super.* 99 (Law Div.1975) (claimant's attorney misled by police to believe that roadway involved belonged to local public entities rather than State); *see also Dyer, supra,* 174 *N.J.Super.* 297 (late filing of survival action permitted where decedent's daughter was a grief-stricken person with limited education). See generally Margolis and Novack, Tort Claims Against Public Entities (1988), Comment to *N.J.S.* 59:8–9.

Other courts have found sufficient reasons to exist where the claimant has suffered serious physical injuries and/or is out of state. *See S.E.W. Friel Co., supra,* 73 *N.J.* 107 (grievous

injuries requiring out of state hospitalization for ninety days and confinement to home for one year); *Kleinke, supra,* 147 *N.J.Super.* 575 (out-of-state resident suffering from embolism near death); *Marino, supra,* 136 *N.J.Super.* 233 (quadriplegic hospitalized outside of state); *Wade v. N.J. Turnpike Auth.,* 132 *N.J.Super.* 92 (Law Div.1975) (several months hospitalization out of state). See generally Margolis and Novack, *supra,* Comment to *N.J.S.* 59:8–9.

One court has found that sufficient reasons for late filing existed due to the complexity of the litigation. In *Torres v. Jersey City Medical Center,* 140 *N.J.Super.* 323 (Law Div. 1976), the claimant experienced difficulty in finding an attorney who was willing to undertake the litigation. There, the court held that "[d]elay in obtaining legal advice due solely to the understandable reluctance of attorneys to handle a complex and difficult case of questionable value is excusable and understandable." *Id.* at 327. "Inability to obtain representation," the court concluded, "can be as incapacitating as a physical incapability." *Ibid.*

Other courts have noted that ignorance of the statutory requirement may constitute sufficient reason for delay in filing. *See Bell v. Camden County,* 147 *N.J.Super.* 139 (App.Div.1977) (noting ignorance of statutory requirement may be relevant consideration within the one year time interval); *Keller, supra,* 137 *N.J.Super.* 1 (accident occurring within thirteen months of adoption of the Act and claimant grief-stricken and without legal counsel—unaware of notice requirements). Courts have also declined to recognize sufficient reasons for delay in filing where the cause for delay has been the mere ambivalence of the claimant. *See Lutz, supra,* 153 *N.J.Super.* 461 (delay in filing due to claimant's indecision about whether to press claim). Courts have likewise rejected a claim of sufficient reasons based solely on the alleged inadequacy of counsel. *See Fuller v. Rutgers,* 154 *N.J.Super.* 420 (App.Div.1977) (claimant aware of potential cause of action but delayed acting because of alleged erroneous advice of attorney), certif. den., 75 *N.J.* 610

(1978); *Bell, supra,* 147 *N.J.Super.* 139 (attorney did not adequately assess facts to discern cause of action against entity); *Roy, supra,* 142 *N.J.Super.* 594 (asserted inability of plaintiff's counsel to ascertain names of particular public employees irrelevant where such names not needed to present claim); *DeMendoza v. N.J. Transit Bus Operations, Inc.,* 194 *N.J.Super.* 607 (Law Div.1984) (insufficient reasons where attorney failed to discover defendant was a state agency). See generally Margolis and Novack, *supra,* Comment to *N.J.S.* 59:8–9.

A review of the above decisions thus reveals that a finding of "sufficient reasons" is not, as defendants suggest, limited to circumstances where a claimant is severely injured or incapacitated. Rather, the cases indicate that trial courts consider combinations of factors when exercising their discretionary authority to grant extensions of time. What constitutes "sufficient reasons," therefore, will vary from case to case; it is not a static requirement.

■ In finding that plaintiffs had stated sufficient reasons for failing to comply with the ninety-day filing requirement, the trial court noted the severity of plaintiffs' injuries, their efforts to investigate the activities at the landfill, and the very nature of the tort involved. Based on our independent review of the record, as well as our appreciation for the novelty and complexity of toxic tort litigation, we are persuaded that the trial court's decision to permit a late filing did not constitute an abuse of discretion. This is particularly so given the liberality with which we instructed trial courts to regard such requests in *S.E.W. Friel Co., supra,* 73 *N.J.* at 122. Like the trial court, we find plaintiffs' stated reasons to be persuasive under the circumstances. In our view, this case does not fall within that category of cases in which trial courts have failed to find sufficient reasons for delay due to plaintiff's ambivalence in pressing a claim. *See Lutz, supra,* 153 *N.J.Super.* at 466. On the contrary, the record before us indicates that plaintiffs exercised reasonable care and diligence in assembling a case of formidable dimensions and complexity.

In *Ayers v. Jackson Township, supra*, 106 *N.J.* at 579, we recognized the enormous difficulties that both law and science face in attempting to deal with the consequences of years of inadequate and improper waste disposal practices. We noted there that "[i]n addition to the staggering problem of removing—or at least containing—the hazardous remnants of past practices, there remains the moral and legal problem of compensating the human victims of past misuse of chemical products." *Id.* at 580. It is primarily the nature of toxic torts that compels us to agree with the trial court's determination that plaintiff set forth sufficient reasons to permit the late filing of claim. Due to the nature of a toxic tort claim, "the most difficult problem for plaintiffs to overcome ... is the burden of proving causation." *Id.* at 585. In addition to the difficulties presented by an often lengthy latency period between exposure and manifestation of disease, toxic tort plaintiffs encounter the further difficulty of identifying a large number of entities who are potentially responsible for improper waste disposal over a period of many years.

We find plaintiffs' efforts to identify the parties responsible for creating the toxic conditions at the landfill to be sufficient reason alone to excuse noncompliance with the ninety-day filing requirement. In *Ayers, supra*, 106 *N.J.* at 587, we acknowledged "the array of complex practical and doctrinal problems that confound litigants and courts in toxic-tort mass-exposure litigation...." We noted there that "identification of the parties responsible for environmental damage[ ]" is one of "the practical difficulties endemic to mass exposure litigation...." *Id.* at 581–82. In the instant case, plaintiffs undertook to identify those entities who deposited toxic waste in the landfill over the course of many years. This research required plaintiffs to make periodic visits to the offices at the DEP in Trenton, where they examined the voluminous records kept there concerning Global. It took plaintiffs a considerable amount of time to compile the data necessary to name the defendants herein. As one commentator has noted, "[d]efen-

dants who [may be potentially] liable for generating and tortiously disposing of toxic waste should not escape liability merely because of the latent character of the harm they create *and the difficulty of identifying a legally responsible party."* "Developments–Toxic Waste," *supra,* 99 *Harv.L.Rev.* at 1607 (emphasis added). We are thus satisfied that plaintiffs' efforts to identify the responsible parties contributed substantially to what we conclude was a justifiable delay.

Further proof that plaintiffs did not merely "sit on their rights" is provided by the fact that they attempted between March and October 1986 to compile data concerning the medical status of area residents. The medical questionnaires that plaintiffs prepared and distributed during this time period provided an appropriate means of ascertaining the identity of potential plaintiffs in a mass-exposure case of this type. The time invested in designing, distributing, and analyzing the results of such questionnaires can be reasonably interpreted as having contributed to plaintiffs' delay in filing a notice of claim. This cause for delay is simply endemic to a mass-exposure case, in which there is a large plaintiff class whose members suffer from varied ailments.

In sum, we find that the investigations plaintiffs undertook to identify both the plaintiff and defendant classes contributed to the delay in filing and provided sufficient reasons to permit a late notice of claim under § 59:8–9. The trial court thus acted well within its discretion when it concluded that "plaintiffs' efforts to investigate the activities at GLOBAL LANDFILL and the very nature of the tort involved established 'sufficient reasons' for the plaintiffs' delay in filing this motion."

### B. *Substantial Prejudice*

We now turn to a determination of whether plaintiffs' notice of late claim, filed seven months after accrual of their cause of action, "substantially prejudiced" the defendants. The Act is silent about what constitutes "substantial prejudice" to the

public entity. In determining whether late filing will "substantially prejudice" the public entity, courts have generally focused on the entity's interest in expediting investigation with the hope of reaching nonjudicial settlement and its interest in protecting its access to current information about the alleged incident. *See S.E.W. Friel Co., supra,* 73 *N.J.* at 118; *Lutz, supra,* 153 *N.J.* at 466; *Reale, supra,* 132 *N.J.Super.* at 109. Consequently, the availability of information to the public entity is largely determinative of the issue of prejudice. Courts have found no substantial prejudice where the event is not "obscure ... unknown and unnoticed by all but plaintiff," but rather has been the object of extensive news coverage and hearings. *Marino, supra,* 136 *N.J.Super.* at 241; *see S.E.W. Friel Co., supra,* 73 *N.J.* at 119; *Wade, supra,* 132 *N.J.Super.* at 99–100. In another case, the court refused to find that the State would be prejudiced by a late notice of claim in light of the fact that the State would be given access to county materials used to investigate the same accident. *Zwirn, supra,* 137 *N.J.Super.* at 105. Similarly, in *Torres, supra,* 140 *N.J.Super.* at 327–28, the court concluded that the public entity hospital would not be prejudiced by a late filing since it had in its possession all of the records regarding the incident. It is also clear that the fact of delay alone does not give rise to a presumption of prejudice; the public entity must present a factual basis for the claim of substantial prejudice. *Kleinke, supra,* 147 *N.J.Super.* at 581.

With regard to the substantial prejudice issue, the trial court concluded that "defendants were not substantially prejudiced by plaintiffs' delay in filing this motion because defendants had constructive notice of a potential lawsuit." Because the public entity's access to relevant information is largely dispositive of the "substantial prejudice" issue, we concur with the opinion of the trial court in this regard. There is a wealth of information regarding the conditions at the landfill, including the DEP's records. *See S.E.W. Friel Co., supra,* 73 *N.J.* at 118; *Lutz, supra,* 153 *N.J.Super.* at 466; *Reale, supra,* 132 *N.J.Super.* at 109; *Torres, supra,* 140 *N.J.Super.* at 327–28;

*Zwirn, supra*, 137 *N.J.Super.* at 105. Furthermore, as the trial court noted, the extensive coverage and public hearings regarding the landfill were sufficient to charge defendants with constructive notice of the potential lawsuit. *See S.E.W. Friel Co., supra*, 73 *N.J.* at 119; *Marino, supra*, 136 *N.J.Super.* at 241; *Wade, supra*, 132 *N.J.Super.* at 99–100. Accordingly, we are persuaded that defendants would not be substantially prejudiced by permitting plaintiffs to file a notice of late claim. We also note in this connection that plaintiffs' late claim will not defeat the purposes of the notice provisions as articulated in the Comment to § 59:8–3: (1) defendants continue to have six months for administrative review of the claim prior to plaintiffs' filing of a lawsuit; and (2) defendants have had and continue to have access to information enabling them to investigate the facts and prepare a defense.

Finally, we note our disagreement with the Appellate Division's conclusion that the attorney-prepared affidavits rendered plaintiffs' application deficient. The affidavits submitted by the plaintiffs' attorneys described the investigations they undertook in order to identify the cause of action and the public entities involved. The affidavits discussed the attorneys' contact with SOHS and the report that disclosed the presence of toxic contamination. These investigations were all within the personal knowledge of the attorneys. Furthermore, *N.J.S.A.* 59:8–4 permits a claim to be presented "by the claimant or *by a person acting on his behalf*." (Emphasis added). In *S.E.W. Friel Co., supra*, 73 *N.J.* at 120–22, this Court, while discouraging the filing of late notices of claim by "complete strangers to the claimant," held that the right to present a claim on behalf of another is extended to a law firm. In light of these factors, it seems unreasonable to conclude that the attorneys' affidavits rendered plaintiffs' application deficient.

We thus reverse the judgment of the Appellate Division and reinstate the order of the trial court permitting plaintiffs to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9.

CLIFFORD, J., dissenting.

The Court makes for the plaintiffs a much better case of "sufficient reasons" for late filing than they do themselves. Here is the full and complete explanation given by plaintiffs, as set forth in their attorney's affidavit:

> Plaintiffs were unable to comply with the notice of claims requirement within the ninety (90) day period because of the severity of their injuries and inability to investigate the circumstances surrounding the complained of occurrence.

Nothing there about any problem of identifying the culprits. Nor can I find in the affidavit much else that the Court has mined from that barren source. I therefore agree with the Appellate Division, substantially for the reasons stated in its opinion, 219 *N.J.Super.* 446 (1987), that the trial court's discretion was mistakenly exercised, wherefore I vote to affirm.

*For reversal*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—Justice CLIFFORD—1.