**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1434-18T4

ESTATE OF JENIFER S. TOWLE,

    Plaintiff-Appellant,

v.

HUDSON COUNTY and HUDSON
COUNTY DEPARTMENT OF
CORRECTIONS,

    Defendants-Respondents,

and

CFG HEALTH SYSTEMS, LLC,

    Defendant.

_____

Argued December 4, 2019 - Decided December 17, 2019

Before Judges Koblitz, Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Warren County and Hudson County, Docket No. L-3091-18.

Daniel G. Marchese argued the cause for appellant (Daniel G. Marchese, and Kaplan Williams Graffeo &

Stern, LLC, attorneys; Daniel G. Marchese, of counsel; Kashif Taraq Chand, on the briefs).

Thomas Anthony Morrone argued the cause for respondents (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Thomas Anthony Morrone, of counsel; Thomas N. Zuppa, Jr. and Cindy N. Vogelman, on the briefs).

PER CURIAM

Plaintiff Estate of Jennifer S. Towle appeals from an October 12, 2018 order denying its motion to file a late notice of tort claim against defendant Hudson County. We affirm.

Towle was confined to the Hudson County Correctional Facility, serving a six-month sentence on a driving while intoxicated conviction. On July 14, 2017, she was found dead in her cell. On July 17, 2017, Towle's family met with jail staff, who informed them her body was transported to the state medical examiner for an autopsy. The State Registrar issued a death certificate on July 18, 2017, which stated the manner of death was "Pending Investigation." The medical examiner informed Towle's family it would be months before an autopsy report was issued.

Prior to her death, Towle was diagnosed with depression and placed on suicide watch while serving her sentence. The autopsy report was completed on September 19, 2017. Defendant did not mail the report to the family until

December 15, 2017. The report concluded Towle's death was a suicide. It noted "an abundant amount of foreign material including Styrofoam, plastic, condiment packets, milk cartons, drink cartons, paper, a Band-Aid, a plastic bag, a cookie wrapper, an exam glove, and a nail clipper" were found in Towle's stomach. Separately, the Hudson County Board of Chosen Freeholders appointed a medical review panel to examine the circumstances surrounding Towle's and other inmate deaths. The Freeholder Board report was published on January 12, 2018.

One of Towle's sons was appointed administrator of her estate on April 16, 2018. The estate retained counsel the following day. Counsel served defendant with a notice of tort claim on July 12, 2018. On July 16, 2018, plaintiff filed a motion for leave to file a late notice of tort claim against defendant pursuant to N.J.S.A. 59:8-9. One of Towle's sons certified that when he received the autopsy report was the first time he received notice of any potential wrongdoing involving his mother's death. He asserted defendant instituted an "information blackout" regarding his mother's death from July 14, 2017 to December 15, 2017, when defendant mailed the family a copy of the autopsy report.

A-1434-18T4

The motion judge denied plaintiff's motion. The judge rejected plaintiff's argument that it had an entire year from the day of Towle's death to move to file a late notice of tort claim. He concluded once plaintiff was on notice of a cause of action after it received the autopsy report, it should have moved to file a late notice by March 2018. The judge also found the Freeholder Board report issued in January 2018, was another opportunity for plaintiff to file its motion by April 2018. He concluded plaintiff offered no explanation of the extraordinary circumstances justifying the delay in filing until July 2018.

We review an order granting or denying a motion for leave to file a late notice of claim under the Tort Claims Act (TCA) for an abuse of discretion. McDade v. Siazon, 208 N.J. 463, 476–77 (2011) (citing Lamb v. Glob. Landfill Reclaiming, 111 N.J. 134, 146 (1988)). "Although deference will ordinarily be given to the factual findings that undergird the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 147 (2013) (citing McDade, 208 N.J. at 473-74). In all cases, "a reviewing court should not substitute its judgment if the trial court's ruling was within 'a range of acceptable decisions.'" In re Kollman, 210 N.J. 557, 577 (2012) (citing Parish v. Parish, 412 N.J. Super. 39, 73 (App. Div. 2010)).

"'The [TCA] modifies the doctrine of sovereign immunity' and sets forth the parameters within which an aggrieved party may recover for the tortious acts of public entities." O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 344-45 (2019) (quoting Feinberg v. State Dep't of Envtl. Prot., 137 N.J. 126, 133 (1994)). Under the TCA, "immunity from tort liability is the general rule and liability is the exception;" it "imposes strict requirements upon litigants seeking to file claims against public entities." Id. at 345 (citations omitted).

The TCA requires a claimant to serve a notice of claim upon a public entity "not later than the [ninetieth] day after accrual of the cause of action." N.J.S.A. 59:8-8. "In determining whether a notice of claim under N.J.S.A. 59:8-8 has been timely filed, a sequential analysis must be undertaken." Beauchamp v. Amedio, 164 N.J. 111, 118 (2000).

> The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within [ninety] days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice.
>
> [Id. at 118–19 (emphasis added).]

Plaintiff argues defendant's "information blackout" "undoubtably constitutes extraordinary circumstances under N.J.S.A. 59:8-9." It contends the

5 A-1434-18T4

Supreme Court's holding in O'Donnell, which allowed a late claim to proceed because a plaintiff "submit[ted] proofs beyond her attorney's error that, when considered in their totality, demonstrate extraordinary circumstances," mandates a reversal here. 236 N.J. at 350. Plaintiff argues the motion judge erroneously interpreted N.J.S.A. 59:8-9 to require "show[ing] extraordinary circumstances at all time[s] prior to its filing of the subject motion." Plaintiff asserts that once a claimant makes the requisite showing to file a late notice, there is no requirement it move quickly or reasonably soon after ninety days, other than to file within one-year of the claim accrual.

We do not reach plaintiff's arguments pursuant to N.J.S.A. 59:8-9 because the issue before us is the statutory interpretation of N.J.S.A. 59:8-8 related to the accrual of its cause of action. Plaintiff's cause of action accrued when it received the autopsy report on December 15, 2017; at best, it accrued on January 12, 2018. It failed to explain why it did not file its notice within the prescribed statutory ninety-day time period of either date. Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1434-18T4