**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0822-19

MAURO SQUICCIARINI,

    Plaintiff-Appellant,

v.

BOROUGH OF CLOSTER,
COUNTY OF BERGEN and
TEMPLE EMANU-EL OF
CLOSTER, INC.,

    Defendants-Respondents.

_____

Argued April 21, 2021 – Decided July 2, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6202-18.

John J. Segreto argued the cause for appellant (Segreto & Segreto, LLP, attorneys; John J. Segreto, of counsel and on the briefs).

Mary C. McDonnell and Edward T. Rogan argued the cause for respondent Borough of Closter (Pfund McDonnell, PC, and Rogan & Associates, LLC,

attorneys; Mary C. McDonnell and Edward T. Rogan, on the brief).

Howard D. Geneslaw argued the cause for respondent Temple Emanu-El of Closter (Gibbons, PC, attorneys; Howard D. Geneslaw, of counsel and on the brief; Kevin W. Weber, on the brief).

William G. Brown IV, Assistant Bergen County Counsel, argued the cause for respondent County of Bergen (Julien X. Neals, County Counsel, attorney; William G. Brown, IV, of counsel and on the brief).

PER CURIAM

The Borough of Closter's (Borough) Zoning Officer and Zoning Board of Adjustment (Board) denied plaintiff Mauro Squicciarini's request to construct a residential dwelling on his two landlocked lots (hereinafter "property") that were created pursuant to a 1928 Closter Park Estates subdivision plan, which allowed improvement on lots in accordance with local regulations. Squicciarini did not appeal the decisions but later filed an action in lieu of prerogative writs against defendants County of Bergen (County); the Temple of Emanu-El, Inc. (Temple), the adjacent property owner; and the Borough. Squicciarini appeals the trial judge's order granting defendants' motions for summary judgment dismissing the action and denying his cross-motion for summary judgment. We affirm.

2

Squicciarini obtained clear title to the property (Block 1810, Lots 6 and 7) in the Borough by court order on March 14, 2014.[1] The property was created pursuant to a 1928 Closter Park Estates subdivision plan, which allowed improvement on the lots in accordance with local regulations. Squicciarini thereafter applied for a permit to construct a single-family residential dwelling (hereinafter "dwelling") on the property relying upon the Borough's Zoning Ordinance §200-71(D), enacted after the subdivision plan was created as the municipality's first zoning ordinance. The ordinance contained a "grandfather clause" (hereinafter "Section 1 of the ordinance")[2] providing in part:

> (1) Any plot, either in District No. 1, Residence Area A, or District No. 2, Residence Area B, may be improved with a building in accordance with other regulations of its district, provided that such plot or parcel shall, prior to the date of the passage of this chapter, fulfill either of the following requirements:

---

[1] In 2005, Squicciarini filed suit to force the Temple to remove a fence it installed in the 1990s, at the Borough's request, when the Temple built a synagogue adjacent to his property. The suit was dismissed because Squicciarini did not have clear title to the property.

[2] We recognize Squicciarini and the trial judge did not intend to be insensitive, but we decline to utilize this term because of its prejudiced origins. See Webster's Third New Int'l Dictionary 987 (2002) (definition of "grandfather clause"); Benno C. Schmidt, Jr., Principle and Prejudice: The Supreme Court and Race in the Progressive Era, 82 Colum. L. Rev. 835 (1982).

A-0822-19

a. Said parcel shall have existed as a separate parcel and shall have constituted a legal building plot prior to the passage of this chapter, provided that the owner thereof owns no adjacent land which may be included as part of the plot in question; or

b. Said plot was included as part of a subdivision heretofore approved by the Planning Board of the Borough of Closter and constituted a legal building plot in said subdivision prior to the passage of this chapter.

[Zoning Ordinance §200-71(D) (emphasis added).]

The Borough's zoning officer denied Squicciarini a permit to build because his property "did not front on an improved street[;] it was landlocked[;] and it did not meet the bulk requirements." Squicciarini then applied to the Board for substantial bulk variance relief to construct the dwelling. The Temple objected to the application as an adjacent property owner.[3] After conducting six hearings over a nine-month period, the Board denied the application on October 18, 2017, suggesting that he can proceed with a (c)(2) planning variance.

Squicciarini did not appeal the Board's denial of his application. Instead, ten months later, he filed a four-count action in lieu of prerogative writs against the Borough, the County, and the Temple. The suit alleged that "[d]efendants'

---

[3] Before Squicciarini acquired title to the property, the Temple obtained final site approval from Closter's Planning Board and the County Planning Board to build a synagogue on its property. Squicciarini did not appeal the approval.

actions constitute continuing interference with and a trespass on the [Squicciarini]'s easement rights in Hartford Street to access [the] [p]roperty. The suit sought judgment "[d]eclaring that [Squicciarini] has the right, pursuant to the Closter Park Estates subdivision of 1928, to construct a residential dwelling on the [p]roperty" and "[c]ompelling . . . [d]efendants to remove all of the encroachments, impediments and conditions that they have approved, constructed or placed across or on Hartford Street to allow [him] unfettered access to Hartford Street," which were obstructions in violation of his "easement rights in Hartford Street." In addition, the suit sought judgment against defendants for compensatory damages, attorney's fees, and costs, with a separate count demanding judgment against the Borough "for . . . the value of [the] [p]roperty."

Following a brief discovery period, defendants separately filed summary judgment motions followed by Squicciarini's cross-motion for summary judgment against defendants. Defendants' motions were granted and Squicciarini's cross-motion was denied. In her written decision, the motion judge determined:

> . . . [T]he Borough and County's belief [is] based in law. N.J.S.A. 59:2-5 provides public entities are ["]not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal

to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.["]

Having failed to appeal the decision of the zoning officer and the [Board], [Squicciarini] now comes before the court seeking an order compelling the Borough to issue a building permit for a "normal sized house" based upon [Section 1 of the ordinance] and the 1928 paper subdivision [plan].

. . . .

. . . However, contrary to Section 1 of the ordinance, the [Board] found that the building proposed by plaintiff did not meet the requirements of the <u>other regulations of its district</u>. It may be that no building can be approved for plaintiff's property on account of zoning regulations and characteristics of the property . . . . What is before this court is a demand that the court direct the Borough to issue a building permit in the face of [Squicciarini's] failure to timely appeal the denial of his application to the zoning board after the [z]oning officer refused to issue him a building permit.

. . . .

[Squicciarini] has forfeited his right to a review of the Board's action by failing to appeal. The court will not, on a record that is remarkable for its sparsity, grant the relief requested.

Squicciarini appealed.

II

When reviewing a grant of summary judgment, we adhere to the same standard as the motion judge. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). A court should only grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). When both parties move for summary judgment, we consider the facts in a light most favorable to the party whose motion was denied. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). We accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citation omitted).

Before us, Squicciarini first argues that his claims are not barred because he did not timely challenge the Board's denial of his bulk variance. He does not cite any law in support of his contention but rather contends the motion judge did not cite any legal authority for her ruling. We disagree.

It is undisputed that Squicciarini did not appeal the zoning officer's decision denying the issuance of a building permit to the Board within twenty days as required by N.J.S.A. 40:55D-72(a). Allowing him to contest the zoning officer's decision without a timely appeal to the Board by pursuing his challenge

7

as an action in lieu of prerogative writs, would nullify the time constraint provided by N.J.S.A. 40:55D-72(a). See Sitkowski v. Zoning Bd. of Adjustment of Borough of Lavallette, 238 N.J. Super. 255, 260 (App. Div. 1990) ("[Defendant, neighboring property owner,] should not be permitted to subvert the time constraints . . . imposed upon administrative appeals [under N.J.S.A. 40:55D-70] by belatedly asserting that he sought only an interpretation of a zoning ordinance.) Thus, Squicciarini cannot circumvent his failure to appeal the zoning officer's decision by instead seeking relief through an action in lieu of prerogative writs.

In addition, the motion judge correctly dismissed Squicciarini's action in lieu of prerogative writs as time barred. An action in lieu of prerogative writs must be filed within forty-five days "after the accrual of the right to the review, hearing or relief claimed." R. 4:69-6(a). And specifically, it "shall [not] be commenced . . . to review a determination of a . . . [zoning] board of adjustment, after [forty-five] days from the publication of a notice once in the official newspaper of the municipality or a newspaper of general circulation in the municipality. . . ." R. 4:69-6(b)(3).

Generally, actions in lieu of prerogative writs are not "maintainable as long as there is available a right of review before an administrative agency which

has not been exhausted." R. 4:69-5. However, a trial judge may excuse the requirement to exhaust administrative remedies or extend the forty-five-day statute of limitations in the interests of justice. Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 169 N.J. 135, 152 (2001) ("Rule 4:69-6(c) . . . authorizes enlargement 'where it is manifest that the interest of justice so requires'"); 21st Century Amusements, Inc. v. D'Alessandro, 257 N.J. Super. 320, 322 (App. Div. 1992) ("R[ule] 4:69-5 requires a litigant . . . to exhaust local administrative remedies requirement . . . unless 'it is manifest that the interest of justice requires otherwise . . . .'"). In addition:

> [T]he doctrine of exhaustion of administrative remedies serves three primary goals: (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.
>
> [City of Atl. City v. Laezza, 80 N.J. 255, 265 (1979).]

"It is axiomatic that the exhaustion of remedies requirement is neither jurisdictional nor absolute." 21st Century Amusements, 257 N.J. Super. at 322 (citing Matawan Borough v. Monmouth Cnty. Bd. of Tax'n, 51 N.J. 291, 296 (1968)). "[T]he exhaustion of remedies requirement is a rule of practice designed to allow administrative bodies to perform their statutory functions in

9

an orderly manner without preliminary interference from the courts."  Brunetti

v. Borough of New Milford, 68 N.J. 576, 588 (1975) (citation omitted).  A judge

may enlarge the forty-five days to appeal only where interests of justice warrant,

R. 4:69-6(c), due to: "(1) important and novel constitutional questions; (2)

informal or ex parte determinations of legal questions by administrative

officials; and (3) important public rather than private interests which require

adjudication or clarification.'"  Borough of Princeton, 169 N.J. at 152 (quoting

Brunetti, 68 N.J. at 586).  None of these exceptions apply here.

To overlook the forty-five-day time limitation would circumvent the court

rule's purpose to promote the important policy of repose and prevent parties from

resting on their rights.  See Borough of Princeton, 169 N.J. at 152-53 (2001)

(citation omitted).  Squicciarini's suit cannot be used to circumvent his failure

to pursue his judicial remedy by appealing the Board's decision.  See Rezem

Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 107 (App.

Div. 2011) (holding a "substantive due process claim in a land use dispute

requires both governmental misconduct that 'shocks the conscience' and

exhaustion of remedies available under our land use law").

Squicciarini argues that he did not make claims under the Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 12-3, against the Borough and the County; thus, the judge erred in dismissing his claims for compensatory damages against them based on immunities afforded by N.J.S.A. 59:2-5.  In support, he cites N.J.S.A. 59:1-4, which provides: "Nothing in this act shall affect liability based on contract or the  right to obtain relief other than damages against the public entity or one of its employees."  He also relies upon First Am. Title v. Rockaway, 322 N.J. Super. 583, 595 (Ch. Div. 1999), and Slocum v. Borough of Belmar, 233 N.J. Super. 437, 440 (Law. Div. 1989), for the proposition that "actions for equitable relief are not subject to the Tort Claims Act."  There is no merit to these arguments.

Squicciarini's action in lieu of prerogative writs seeks declaratory relief, which is not applicable to the TCA.  N.J.S.A. 59:1–4; see also Blazer Corp. v. N.J. Sports & Exposition Auth., 195 N.J. Super. 542, 549 (Law Div. 1984).  His suit also speaks to tort claims in demanding compensatory damages and attorney's fees and costs against the Borough and the County for their alleged interference with and trespass on lands resulting in the denial of his right to construct the dwelling.  The judge therefore correctly applied immunity to the

governmental bodies under N.J.S.A. 59:2-5. This immunity is "pervasive and applies to all phases of the licensing function," whether "discretionary or ministerial," and extends both to the actual act of issuance of a permit or license and the underlying decision-making process. Malloy v. State, 76 N.J. 515, 520 (1978). Thus, the actions by the Borough and the County pertaining to Squicciarini's efforts to build on the property cannot seek monetary damages due to alleged tortious conduct. See id. at 521.

In addition, assuming TCA immunities did not apply, Squicciarini failed to file a tort claim notice within ninety days of the Board's denial of his variance application. See N.J.S.A. 59: 8-8. Nor did he make a request to file a late tort claim notice. See N.J.S.A. 59:8-9.

IV

Lastly, we briefly address Squicciarini's contention that because there was no ordinance restricting his building on the property at the time it was created in 1928, Section 1 of the ordinance exempts him from any current zoning ordinances, thereby making the property a nonconforming lot under N.J.S.A. 40:55D-5[4] and not requiring him to seek a variance from the Board. He submits

---

[4] N.J.S.A. 40:55D-5 defines a "[n]onconforming lot" as "a lot, the area, dimension or location of which was lawful prior to the adoption, revision or

that the property "existed as a legal building lot prior to the adoption of Closter's [z]oning [o]rdinance in 1940." These contentions should have been raised in an appeal of the Board's October 18, 2017 decision denying Squicciarini's application to build the dwelling.

Squicciarini did not have an absolute right to build on his property, as he contends. Section 1 of the ordinance unequivocally stated that building improvements on the lots created by the 1928 Closter Park Estates subdivision plan must be in accordance with other regulations of the Borough. The Board's denial of Squicciarini's application to build was due to its determination that his building plans were inconsistent with its zoning ordinances. Because Squicciarini did not challenge that denial on appeal, we do not address the specifics of his application. Filing an action in lieu of prerogative writs was an improper means to seek reversal of the Board's action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

amendment of a zoning ordinance, but fails to conform to the requirements of the zoning district in which it is located by reason of such adoption, revision or amendment."

13                                                            A-0822-19